Joe L. SINGER, Singer Bros., an Oklahoma partnership, and MT Partnership, an Oklahoma partnership, Appellees,

v.

Stanley H. SINGER, Andrea S. Pollack, Gemini Realty Company, an Oklahoma general partnership, and the First National Bank and Trust Company of Oklahoma City, a national banking association (Mortgagee), Appellants.

No. 55329.

Court of Appeals of Oklahoma, Division No. 2.

June 23, 1981.

Rehearing Denied Aug. 3, 1981.

As Corrected Sept. 3, 1981.

Certiorari Denied Sept. 22, 1981.

Released for Publication by Order of Court of Appeals Oct. 2, 1981.

Kenneth N. McKinney, McKinney, Stringer & Webster, Oklahoma City, for appellees.

Earl D. Mills, Reggie N. Whitten, Foliart, Mills & Niemeyer, Julian P. Kornfeld, Kornfeld, McMillin, Phillips, & Upp, Oklahoma City, for appellants.

BOYDSTON, Judge.

This appeal is from an unusual judgment of district court declaring land purchased by defendants is to be held in constructive trust for the benefit of persons not party to this suit. Suit was filed by Joe L. Singer, an individual, Singer Bros. partnership and MT Partnership against Stanley Singer (Stanley) and his sister Andrea Singer Pollack (Andrea). Judgment was rendered for Josaline Production Co., a partnership, and various members of the Trachtnberg family. The Trachtnbergs declined to participate in either the suit or to claim a share of the judgment. All parties to this action are related through family ties, intricate partnerships and trusts. Defendants borrowed and paid $1.5 million for the land and incurred $150,000 in interest expense. Trial judge refused to require plaintiffs to pay proportionate share of the $150,000 interest expense. Defendants appeal both parts of judgment.

### SINGER FAMILY BUSINESS RELATIONSHIP

The Singer family formed an oil production partnership in the late 1930's. Through inheritance and assignments, partnership interests have been conveyed and passed down to other family members, fractionalizing the ownership.

The original partnership was called Josaline Production Co. and was made up of the following partners prior to 1947:

Joseph B. Singer,

Joe L. Singer,

Alex Singer,

Trachtnberg brothers, and

Singer Bros. (Joe L. and Alex Singer).

In 1947, the partnership was dissolved and in the distribution in kind which followed the Trachtnbergs received 17 percent of the assets. The Singer family continued to operate as a partnership after the Trachtnbergs were excluded. However, it should be noted, the Trachtnbergs continued to invest in Josaline drilling programs on an *ad hoc* basis.

In 1962, a revised partnership contract was executed between the Singer family members. The new partnership consisted of essentially the same partners or their successors, except for the Trachtnbergs who remained legally aloof from Josaline. Between 1962 and 1977 intrafamily assignments resulted in Andrea and her brother Stanley becoming partners, assuming the interest of their father, Joseph B. Singer (Joseph B.), who then dropped out of the partnership. In 1977, the parties re-drafted the partnership agreement, carefully defining duties and rights of the parties and restating the current ownership percentages.

The 1962 partnership agreement contained the following provision:

7. It is further understood and agreed by and between the individual partners of COMPANY that on and after April 1, 1962, *each partner shall be free to enter into business and other transactions for his or her own separate individual account even though such business or other transactions may be in conflict and/or competition* with the business of COMPANY, and that neither the COMPANY nor any individual member of the partnership or COMPANY shall be entitled to claim or receive any part of or interest in such transactions; *it being the intention and agreement that* on and after April 1, 1962, *any individual partner* of the partnership of COMPANY *shall be free to deal on his own account to the same extent and with the same force and effect as if he or she were not and never had been members of said partnership.* (emphasis supplied)

The 1977 restated partnership agreement contained the following paragraph:

8. *Each partner shall be free to enter into business and other transactions for his or her own separate individual account,* even though such business or other transaction may be in conflict with and/or competition with the business of this partnership. Neither the partnership nor any individual member of this partnership shall be entitled to claim or receive any part of or interest in such transactions, *it being the intention and agreement* that any *partner will be free to deal on his or her own account to the same extent and with the same force and effect as if he or she were not and never had been members of this partnership.* (emphasis supplied)

After 1947, the Trachtnbergs continued to hold a 17 percent undivided co-ownership in the oil and gas properties which had been distributed when they were dismissed from the partnership. Josaline continued to do business. As opportunities arose, in many cases, the Trachtnbergs were permitted to invest in Josaline projects *to the same extent* (17 percent) as their original holdings. It is important to note that profit from each leasehold estate was distributed to the Trachtnbergs as royalty owners, or as working interest co-owners, and not as a dividend from the Josaline partnership. Costs were assessed based on the same formula as would apply to any other leasehold estate co-owner, and they were not burdened with surcharge for partnership expenses, other than the usual cost of acquisition and drilling. In other words, since 1947, the Trachtnbergs have been treated as cotenants and participating investors in most of

the projects in which Josaline was involved, particularly in the Britton area.[1]

## THE DISPUTE

On July 25, 1979, the Josaline partners held a meeting in Oklahoma City which was attended by several members of the Josaline partnership and by the Trachtnbergs. At the meeting several investment opportunities were raised, but the meeting was mainly held to discuss routine business of Josaline. One item of interest on the agenda was the possible purchase by the "group"[2] of 95 acres of land in the Britton area owned by Investors Diversified Services (IDS). The proposed purchase included 45 acres of minerals and was listed for sale at a purchase price of one and one-half million dollars.

Prior to the meeting, Joe L. requested Stanley to look into the possibility of purchasing the land through the listing realtor. At the meeting the IDS land was briefly discussed but the decision of whether to purchase was deferred.

After the meeting, defendants Stanley and Andrea formed a general partnership, Gemini Realty Company (Gemini), and on September 25, 1979, purchased the IDS land, taking title in Gemini's name without further consultation with any of the Josaline partners or the Trachtnbergs.

Within a short time, Joe L. learned of the transaction and demanded Singer Bros. partnership be permitted to purchase 50 percent of the property. Initially, Stanley offered to give Singer Bros. 16.66 percent but withdrew the offer before it had been accepted. No other member of the Singer family requested or was permitted to participate and this suit resulted.

## I

When the entire record is considered, we find this suit is prosecuted *de facto* by the individual members of Josaline for and on behalf of Josaline and its partners. The allegations of the petition aside, the case was tried on the theory that Josaline's individual partners have been simultaneously engaged in an "oral" partnership within the Josaline partnership. This "oral" partnership includes the Trachtnbergs and affects the partners business dealings in the Britton area of interest. This untenable theory is merely a facade which is specifically designed to avoid the clear implications of paragraph 8 of the 1977 Josaline partnership contract. The gratuitous inclusion of the Trachtnbergs is an integral but superficial attempt by plaintiffs to further camouflage and legitimize Josaline's claim. In order to demonstrate this conclusion, we examine the pleadings and evidence.

Suit was filed by Joe L. Singer, Singer Bros., and MT Partnership. Singer Bros. is a partnership between Joe L. Singer and his brother, Alex Singer; MT Partnership is composed of Joe L. Singer and his son, George and was formed April 13, 1979.

The petition alleges plaintiffs are "either partners or joint venturers" with Morris and Jack Trachtnberg and Andrea and Stanley Singer.[3]

No allegation is made claiming direct ownership by Josaline, but other "oral"

---

1. Josaline has traditionally dealt in the Britton area since the partnership's inception. The area was vaguely defined, if at all, by the evidence as being within 20 sections of land lying partly in Townships 12 and 13 North and Ranges 3 and 4 West, all within Oklahoma County. Josaline has drilled six wells in the Britton area.

2. The term "group" has been used by plaintiffs throughout the trial to denote the individual partners of Josaline *plus* the Trachtnbergs.

3. The petition alleges Singer Bros. owns 24.9 percent of the oral partnership and Joe L. Sing-

er and MT Partnership each own 8.3 percent. It further alleges Stanley and Andrea own 4.15 percent and 6.225 percent respectively. This allegation of ownership amounts to an aggregate of 51.875 percent of the claimed oral partnership. We are not told in the pleadings, nor is it revealed in the evidence, but the Josaline partnership agreement and exercise of options "to participate" filed postjudgment by the Fleischakers (other relatives) reveals that these are the same partners and the same percentages of ownership these parties hold in Josaline.

partners are alleged to be R. H. Fleischaker, Adeleine Fleischaker, David Fleischaker and Arthur Keith Whitelaw, III, who are also partners in Josaline.

Next we contrast the journal entry of judgment with the carefully drawn petition.[4] The court found the IDS land to be held subject to a constructive trust and that Stanley and Andrea were trustees of the court-imposed trust.

The court found the beneficiaries of the trust are:

Josaline Production Company [5] 83%

The Trachtnbergs (Daniel, Morris, Jack, Lawrence and Marsha) and J & L Energy Co., collectively. 17%

The comparison is necessary because, though the petition carefully avoided pleading Josaline had *any* rights in the claimed oral partnership, *all* judgment right inuring to beneficiaries derive directly and solely from their ownership in Josaline.[6] We find Josaline and its partners to be the real parties in interest.

Judgment is silent as to the legal theory upon which the court relied to impose the trust. We know 83 percent of the IDS land was awarded to Josaline and 17 percent to the Trachtnbergs and that the individual claims of Joe L., Singer Bros. and MT Partnership was excluded. In this respect, the trial court implicitly ruled Josaline and the Trachtnbergs are "oral" partners [7] within the Britton area of interest. We find the variance between pleading and judgment to be fatal and the trial court's conclusion to

be erroneous and not supported by the record. We further find our conclusion would be the same had Josaline been properly joined.

## II

▬ Partnership is a creature of voluntary agreement. A partnership relationship can be created by oral agreement but proof of the *fact* of partnership and *its terms* must be established, by "clear, unequivocal and decisive" evidence.[8] Oral testimony offered to prove these facts is not given much weight.[9] Therefore, the question presented here is whether the terms and fact of the alleged oral partnership have been proven by clear, unequivocal and decisive evidence.[10] We find from a thorough review of the record, the judgment is clearly against the weight of the evidence.

We find it significant that the Trachtnbergs refused to participate in this suit beyond giving depositions. They affirm doing business with Josaline, but offer no support for plaintiffs' material allegations concerning the fact or terms of the alleged oral partnership. Postjudgment, the Trachtnbergs even declined to accept the 17 percent windfall awarded to them by the court. Jack Trachtnberg denied being partners with Josaline, much less with Stanley and Andrea. A candid summary of his testimony is he considered himself only a co-investor with Josaline. The strongest statement he made tending to support the allegations in the petition was:

4. The petition does not specifically allege whether the claimed partnership is oral or written, but the proof offered relies strictly on the theory of oral partnership based on a 1974 agreement between Joe L. and Joseph B. The latter was not even a Josaline partner in 1974.

5. In other words, Stanley and Andrea would receive 4.15 percent and 6.225 percent respectively of 83 percent; Singer Bros. would receive 25 percent, etc.
MT Partnership, Singer Bros. and Joe. L. Singer individually are not mentioned in the journal entry. Presumably, their proof failed, although the court overruled defendant's demurrer at close of plaintiff's case-in-chief.

6. The Trachtnbergs are the exception as they were gratuitously (and apparently unwillingly)

thrust into the lawsuit for the purpose of "window dressing" and to provide consistency.

7. We summarily dismiss the theory of "joint venture." Joe L. testified the "oral" partnership or "group" derives from a 1974 agreement and is an ongoing relationship confined to the Britton area.

8. *Coryell v. Marrs*, 180 Okl. 394, 70 P.2d 478 (1937) and *Boles v. Akers*, 116 Okl. 266, 244 P. 182 (1926).

9. *Ward v. Ward*, 197 Okl. 551, 172 P.2d 978 (1946).

10. *King v. Rainbow*, Okl., 515 P.2d 228 (1973).

I felt like, I mean, I never thought of it in legal terms, what it was, other than I felt like we were in a joint interest for development.

We observe the manner of dealing between these highly sophisticated investors, partners and family members completely belies such a casual business relationship as contended by Joe L. It is noted that the various businesses owned by the parties (Josaline Production Co., Singer-Fleischaker Royalty Co., Singer Bros., MT Partnership, Garfield Associates, Lion Petroleum Co., J & L Production Co., etc.) all were family partnerships and each was carefully reduced to writing. The agreements which have been placed of record in this case are detailed, thoughtfully prepared and comprehensive in setting forth the rights, duties and privileges of each of the parties. It is inconsistent that men of such sound business tradition would be party to an oral business relationship as extensive and pervasive as that claimed by plaintiffs without also reducing it to writing.

▊ Rather, we believe there was, in fact, a traditional family business interest in the Britton area. For their common profit and convenience, they did business together. All such business was conducted through Josaline. However, outside the Josaline partnership, any interest offered to outsiders was treated as an *ad hoc* co-investment opportunity. These outside investors included the Trachtnbergs, who retained the privilege of whether to accept or reject the investment opportunity. In other words, the parties outside Josaline were simply investors with a common area of interest.[11] Without the Trachtnbergs, suit is stripped to the unclouded, true dispute, i. e. Josaline against its own partners.[12]

The actions of Joe L. Singer were inconsistent with his theory that Stanley owed a fiduciary duty to either Josaline or the Trachtnbergs. After he discovered Stanley purchased the IDS land, he demanded 50 percent of the property for Singer Bros. His letter to Stanley said:

It is my understanding that we are getting half of the surface and minerals that have been purchased in the NE/4 of Section 30–13N–3W, [the IDS land]. As per our conversation, *we wish to take title to the surface in Singer Bros. and take title to the minerals in Garfield Associates, LTD.,* . . . . (emphasis supplied)

He seemed cavalierly unconcerned about protecting the other Josaline partners, who, according to his trial theory and the judgment, were entitled to 83 percent. Nor was he concerned for the rights of the Trachtnbergs who would have been entitled to a 17 percent share as partners.

The testimony of Joe L. is critical. He testified the agreement on which he relies to create the alleged special partnership was made in 1974 and was continuous.

Plaintiffs' case is severely, if not fatally, weakened by the testimony of Joe L. Singer.[13] He admitted having no personal oral agreement between himself, Stanley and Andrea. He testified the only conversation he had which gave him authority to include Andrea and Stanley in the "oral partner-

11. Investment in oil and gas leases as cotenants or co-owners gives no presumption of the existence of partnership. *Gillespie v. Shufflin*, 91 Okl. 72, 216 P.2d 132 (1923). In fact, it is presumed, in the absence of a contrary showing, such ownership is merely a cotenancy. *McIllwain v. Bills*, 206 Okl. 238, 242 P.2d 707 (1952). It is well settled that the relationship of cotenancy is not a fiduciary relationship. *Taylor v. Brindley*, 164 F.2d 235 (10th Cir., 1947). Further, cotenants deal with one another at arms length. *Neil v. Shamburg*, 158 Pa. 263, 27 A. 992 (1893).

12. The testimony of Jack Trachtnberg leaves no doubt he did not consider himself to be a partner of anyone except his brother. On cross-examination, his response indicated bewilderment when counsel asked if he felt himself bound by any of the acts of Stanley, Andrea, Joseph B. or Joe L. In fact, he never really claimed to have anything more than an investor status with any of the parties involved.

13. Joe L. Singer has been the prime mover of Josaline since the 1962 partnership agreement. He is its managing partner and holds strong, almost patriarchal control over the clan business. He personally brought this suit and his testimony is considered critical, if not determinative.

ship" agreement was with Andrea and Stanley's father, Joseph B., in 1974. At the time Joe L. claimed to have obtained this proxy-like approval of the "oral partnership" covering the Britton area, Joseph B. and his son Stanley were seriously at odds over another business dispute. The father-son estrangement was apparently common knowledge within the family and continued for several years. Such a strained relationship logically militates against an important, binding business decision being made by one for the other. Even if such an agreement had been made by Joseph B., no proof was offered that he was acting as agent for his children. Joseph B., Stanley and Andrea emphatically denied the authority for any such agency existed.

It is undisputed that between 1962 and 1979 Singer Bros. and Joe L. purchased other tracts of land and minerals within the Britton area.[14] At no time were these offered to the Josaline partners.

Joe L. claimed the "group" shared confidential information regarding the Britton area of interest and maintained close control over production and geological information and prospects for development. Yet during this same period, six non-family investors were permitted to invest in various production projects in this same area.[15]

We find no evidence of "clear, unequivocal and decisive" quality to justify the court's implicit finding that Josaline and/or its members are partners with the Trachtnbergs.

### III

After having identified the true parties in interest, resolution of the dispute—Josaline's contention that by reason of the fiduciary aspects of partnership it is entitled to participate in the purchase of the IDS land—is simplified. We would agree with Josaline's contention except for paragraph 8 of the partnership contract.

 We find the defendants had a contract right to do precisely what they did, namely, compete with the partners of Josaline and with Josaline itself "as if there never had been a partnership." Because of paragraph 8, the fact that the land is in an area of partnership interest does not preclude intra-partnership competition. A special area of interest is just another way of labeling and describing an investment area where competition is ordinarily not permitted between partners, absent agreement.[16] Josaline contracted away its right to expect a noncompetitive fiduciary relationship with any of its partners.

We find paragraph 8 is designed to allow and is uniquely drafted to promote spirited, if not outright predatory competition between the partners. Its strong wording leaves no doubt in our minds that its drafters intended to effect such a result. This is reinforced by the fact the partners repeated the same clause in two successive contracts. We construe it to legitimize and extend free competition between the partners to partnership prospects and opportunities, including the Britton area of interest and the IDS land.

From a fiduciary aspect, the permissible boundaries of intra-partnership competition, under paragraph 8, are limited only after the threshold of actual partnership acquisition has been crossed. Had Stanley and Andrea pirated an existing partnership asset or used partnership funds or encum-

---

**14.** This defensive proof was brushed aside by Joe L. at trial as being small, inconsequential parcels of a much larger tract purchase. We note the "inconsequential" 10 acre mineral tract is the equivalent of 25 percent of the IDS minerals, it being conceded by both sides that the IDS minerals constitute the major value of the entire purchase.

**15.** These included Ashland Oil Co., Texas Pacific Oil Co., Lyndell Buck, Frontier Oil Co., Union Texaco Oil Co. and Marilyn Gill.

**16.** Absent fraud, illegality or overreaching in the *procurement* of written contract, parties rights are fixed by the contract. *See St. Clair Lime Co. v. Ada Lime Co.*, 196 Okl. 29, 162 P.2d 547 (1945) and *Brittish American Oil Producing Co. v. Midway Oil Co.*, 183 Okl. 475, 82 P.2d 1049 (1938).

bered Josaline financially, our decision would be different.

It is fundamental that even if the 1962 free competition clause was waived by the purported 1974 oral agreement, the new contract drafted between the Josaline partners in 1977 resuscitated and resurrected it. Further, there is a complete absence of proof the partners waived paragraph 8 rights by their post-1977 conduct.

## IV

The remaining issue regarding failure of trial court to require Josaline to reimburse Stanley and Andrea for acquisition interest costs becomes moot by our holding. We do observe the trial court's ruling is singularly harsh and, in itself, constitutes an abuse of discretion.

We hereby reverse and remand to trial court with instructions to vacate the judgment rendered below and order judgment be rendered in favor of defendants. Costs of appeal and trial taxed against plaintiffs.

BACON, P. J., and BRIGHTMIRE, J., concur.