T.C. Memo. 1997-390

UNITED STATES TAX COURT

ESTATE OF BIRNIE M. DAVENPORT, DECEASED, PATRICIA L. VESTAL,
PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 22900-94, 23011-94.          Filed August 25, 1997.

<u>Thomas G. Potts</u>, for petitioner.

<u>Elizabeth Downs</u> and <u>Bruce K. Meneely</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined the following

deficiencies in, and addition to, petitioner's taxes:

| Year | Gift Tax Deficiency | Estate Tax Deficiency | Addition to Tax Sec. 6651 |
|------|---------------------|-----------------------|---------------------------|
| 1980 | $1,422,154 | --- | $355,538 |
| 1991 | --- | $25,131 | --- |

Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect during 1980, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a gift tax deficiency for the estate of Birnie M. Davenport on the ground that Birnie M. Davenport (Birnie) made taxable gifts in 1980 of shares of stock in Hondo Drilling Co., Inc. (Hondo). Respondent also determined a deficiency in petitioner's estate tax due to an increase in adjusted taxable gifts made in previous years.[1]

The primary issues for decision are:

(1) Whether Birnie owned stock of Hondo during her lifetime; and if so,

(2) whether Birnie transferred stock of Hondo to Gordon Davenport, Patricia Vestal, and Charles Botefuhr in July of 1980; and if so,

(3) whether Birnie's transfer of Hondo stock in July of 1980 constituted a gift for Federal gift tax purposes;

(4) whether the 1980 Federal gift tax return filed by the Estate of Birnie M. Davenport was delinquently filed; and

(5) whether the period of limitations for assessing a gift tax deficiency in this case has expired.

---

[1] The cases involving the estate tax and the gift tax deficiencies were consolidated for purposes of trial, briefing, and opinion. The parties do not address the estate tax deficiency on brief. We assume, therefore, that the parties agree that our resolution of the gift tax issue will also resolve the estate tax deficiency.

As a preliminary matter, we must decide whether certain documents submitted by respondent during the trial of this case should be admitted into evidence.  Prior to trial, petitioner submitted two motions seeking to exclude these documents from evidence.  At trial, respondent sought to admit four of the documents which were, inter alia, referenced in those motions.  Petitioner maintained its objections to the challenged documents at trial.  The documents which are the subject of petitioner's motions and subsequent objections are:

1.  An agreement executed by Patricia Vestal, Gordon Davenport, and Charles Botefuhr on November 28, 1980, which references transfers made by Birnie Davenport to Patricia Vestal, Gordon Davenport, and Charles Botefuhr (Exh. AD).

2.  A letter dated April 11, 1984, from John H. Conway, Jr., Esq., and Charles B. Tetrick, Esq., addressed to Mr. Gordon Davenport and Mrs. Pat Vestal regarding the settlement of the estate of Elizabeth G. Davenport Tax Court case (Exh. AF).

3.  An agreement dated April 22, 1984, involving the Commissioner and the Estate of Elizabeth G. Davenport, Deceased, Gordon E. Davenport, and Patricia Vestal, Executors (Exh. AE).

4.  A letter dated August 3, 1991, from Edward Botefuhr to Corrine Childs in response to a letter from Ms. Childs requesting information on a gift tax return that was allegedly to be filed by Mr. Botefuhr on behalf of Birnie (Exh. AG).

Petitioner argues that Exhibits AF and AE are not admissible pursuant to Federal Rules of Evidence 408 (hereinafter rule 408) and section 7121, and that Exhibits AD and AG are not admissible pursuant to this Court's standing pretrial order.  Over petitioner's objection, these items were offered at trial subject to the parties' arguing their admissibility on brief.

Exhibits AF and AE

Petitioner contends that Exhibits AF and AE should be excluded from evidence pursuant to Federal Rules of Evidence 408.[2]  Petitioner argues that these exhibits are inadmissible evidence of settlement negotiations.  Petitioner contends that these exhibits relate to issues raised in connection with a case before this Court titled Estate of Davenport v. Commissioner, docket No. 26022-83.  That case involved the issues of (1) ownership of shares of Hondo, and (2) the value attributable to that stock.  Respondent contends that respondent does not seek to introduce the documents to prove liability for, validity or invalidity of, or the amount of the claim which was the subject

---

[2]  Fed. R. Evid. 408 provides, inter alia:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible. * * *

of the parties' dispute with respect to the estate of Elizabeth Davenport. Respondent contends that Exhibit AE was introduced to show that only 1,610 shares of Hondo stock were included in the estate of Elizabeth Davenport for Federal tax purposes and that Exhibit AF was introduced to show that respondent conceded the joint ownership issue with respect to the estate of Elizabeth Davenport. Additionally, one of the fiduciaries who signed the estate tax return, and prosecuted the petition, on behalf of that estate, namely Patricia Vestal, is the personal representative of Birnie's estate.

The obvious purpose of rule 408 of the Federal Rules of Evidence is to promote settlements. Evidence of settlement negotiations or of other attempts to compromise a claim is inadmissible if offered to show liability for the claim or that the claim is invalid. Fed. R. Evid. 408; Wentz v. Commissioner, 105 T.C. 1, 5-6 (1995).

We agree with respondent that Exhibits AE and AF were not offered to show liability for any claim against the estate of Elizabeth Davenport, nor were they being offered to show the invalidity of any such claim. Consequently, we find that rule 408 does not preclude the admission of those exhibits.

Alternatively, petitioner argues that Exhibit AE should be excluded pursuant to section 7121, which provides, inter alia:

> SEC. 7121(a). Authorization.--The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or

of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.

Petitioner contends that Exhibit AE is a closing agreement and that under section 7121 a closing agreement is relevant to the tax liability only of the person (or estate) named in the closing agreement.  Respondent fails to address this argument on either opening or reply brief.

Exhibit AE is not a closing agreement within the scope of section 7121.  See Klein v. Commissioner, 899 F.2d 1149, 1152 (11th Cir. 1990).  Accordingly, we shall deny petitioner's motion and overrule petitioner's objections to the admission of Exhibits AE and AF.

Exhibits AD and AG

Petitioner contends that Exhibits AD and AG should be excluded from evidence pursuant to this Court's standing pretrial order which reads, in relevant part:

> Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session.  The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown.

Petitioner objected to the admission of these exhibits on the grounds that they were not exchanged prior to 15 days before trial as required by the standing pretrial order.

Petitioner first informed respondent on March 6, 1996, that it intended to argue that Birnie never owned the Hondo stock in issue. On March 11, 1996, respondent filed a trial memorandum with this Court. In the trial memorandum, respondent states that

> petitioner has raised a new issue regarding the decedent's ownership of the property which is the subject of the gift tax, of which respondent received notice on March 6, 1996. The new issue has not been fully articulated by the petitioner and the respondent has not had the opportunity to evaluate the argument or respond to it.

On March 21, 1996, 4 days before the calendar call which included the instant case, respondent faxed, inter alia, Exhibits AD and AG to petitioner's counsel and indicated that they should be included in a supplemental stipulation of facts. These documents relate to petitioner's new argument. Petitioner claims that respondent purposely delayed presenting these documents and that they should be excluded from evidence pursuant to the pretrial order. We disagree.

The purpose of the pretrial order is to avoid surprise, promote stipulation of uncontroverted facts and exhibits, and shorten trial time. Respondent responded to petitioner's new argument within a reasonable time. Petitioner was presented with these documents prior to the start of the trial and had sufficient time to prepare a response. Additionally, these

documents were initially provided to respondent by petitioner.[3] Fundamental fairness dictates that respondent be allowed the opportunity to offer into evidence these documents which respondent claims will refute petitioner's position.  See Moretti v. Commissioner, 77 F.3d 637, 644 (2d Cir. 1996).  Where, as in this case, a party has shown good cause for any failure to comply with this Court's standing pretrial order, we may excuse such noncompliance.  Accordingly, we shall overrule petitioner's objection to the admission of Exhibits AD and AG and deny petitioner's motion in opposition to admission of documentary evidence as it relates to those exhibits.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.  At the time the instant petitions were filed, Patricia L. Vestal, the personal representative of the Estate of Birnie M. Davenport, resided in Tulsa, Oklahoma.

Birnie, decedent, died at the age of 85 on February 6, 1991, in Tulsa, Oklahoma.  Decedent died testate.  Decedent's last will and testament was admitted to probate on April 4, 1991.  Patricia L. Vestal, decedent's niece, and Gordon E. Davenport and Charles E. Botefuhr, decedent's nephews, were appointed by the probate

---

[3]  Respondent argues on brief that these documents were originally provided by petitioner, and petitioner does not dispute this on reply brief.  We therefore conclude that these documents were provided by petitioner.

court to act as co-personal representatives of the estate of Birnie M. Davenport.  A Form 706 United States Estate Tax Return for the Estate of Birnie M. Davenport was filed timely on November 7, 1991.  The estate tax return filed on behalf of petitioner was signed by Patricia L. Vestal and Gordon E. Davenport as co-personal representatives of the estate.  The estate tax return showed tax due of $144,030, which was paid at the time the return was filed.

A Form 709, United States Quarterly Gift Tax Return for 1980 (1980 gift tax return), was filed on behalf of Birnie simultaneously with the estate tax return, on November 7, 1991. The 1980 gift tax return was signed by Patricia L. Vestal and Gordon E. Davenport.  The 1980 gift tax return reflected a gift of 537 shares of Hondo stock made on July 7, 1980, by Birnie to Charles Botefuhr.  For purposes of computation of the 1980 gift tax, the estate valued the 537 shares of Hondo stock at $804 per share.  The 1980 gift tax return reflected a gift tax due in the amount of $95,322, which was paid at the time that the return was filed.

Birnie lived most of her adult life with her older sister, Elizabeth Davenport (Elizabeth).  Both Birnie and Elizabeth remained unmarried and pursued careers with oil and gas companies--Birnie as a legal secretary and Elizabeth as an assistant to senior corporate executives.  Both Birnie and Elizabeth had extensive business experience.

Pursuant to an oral agreement[4] of at least 30 years prior to the death of Elizabeth, Birnie and Elizabeth commingled all of their earnings and assets. Birnie and Elizabeth maintained joint checking and savings accounts. Birnie and Elizabeth built a home together, sharing equally in the costs of construction and maintenance. Title to the sisters' house was held in both of their names. Pursuant to the sisters' oral agreement, legal title to shared assets was held in Elizabeth's name. Birnie and Elizabeth shared the costs of all investments and considered all investments to be equally and jointly owned. The sisters' shared assets included all stocks and bonds held in the name of Elizabeth.

Birnie and Elizabeth both participated in making investment decisions and agreed that each of them owned one-half of all property acquired by them regardless of the name in which title was held. These assets included 3,220 shares of stock of Hondo. Birnie considered 1,610 shares of the Hondo stock her own property notwithstanding that the shares were held in Elizabeth's name.

Birnie prepared the Federal and State income tax returns for both herself and Elizabeth until 1965. In accordance with their

---

[4] Petitioner asserts that this oral agreement created a business partnership between the two sisters. We shall address this assertion in our discussion; for convenience, however, in our findings of fact we shall refer to it as either the agreement or the arrangement.

joint ownership agreement, on the Federal and State income tax returns which Birnie prepared for herself and her sister, Birnie reported one-half of all investment income as being hers and one-half as being Elizabeth's.

Birnie and Elizabeth maintained an office in their home from which they conducted their investment activities. Birnie reported one-half of the allowable deductions with respect to such office on her own Federal income tax returns and one-half on Elizabeth's Federal income tax returns. After 1965, the Federal and State income tax returns of Birnie and Elizabeth were prepared by Corrine Childs, C.P.A., a licensed attorney, tax adviser, and tax return preparer. Birnie and Elizabeth informed Ms. Childs of their joint ownership agreement and of the manner in which they had been reporting their income, deductions, gains, and losses with respect to their investments. On the returns which Ms. Childs subsequently prepared for Birnie and Elizabeth, income, deductions, gains, and losses with respect to investments were reported one-half on the return of Birnie and one-half on the return of Elizabeth.

Throughout the period of their agreement, Birnie and Elizabeth filed their Federal and State income tax returns reporting their wage earnings separately and sharing equally in the profits and losses resulting from their various investments. Several of the Federal income tax returns filed by Birnie and Elizabeth during the period 1965 through 1979 were audited. Upon

explanation of the joint ownership arrangement between the sisters, their split of investment income and expenses and reporting of 50 percent of said income and expenses on each of their returns was accepted by the Internal Revenue Service (IRS).

Elizabeth died on December 2, 1979. Gordon Davenport and Patricia Vestal were appointed the coexecutors of Elizabeth's estate. Charles Botefuhr also was appointed a coexecutor of the estate of Elizabeth Davenport. Mr. Botefuhr resigned as a coexecutor of Elizabeth's estate in September, 1980, over a dispute on how to report assets titled in Elizabeth's name.

The estate of Elizabeth Davenport filed Federal and State estate tax returns which included one-half of the value of the stocks and bonds, the legal title to which was held in Elizabeth's name at the time of her death, in Elizabeth's gross estate. These stocks included 1,610 shares of Hondo stock, valued at $804 per share. The remaining one-half of the stock of Hondo was considered by the coexecutors of Elizabeth's estate to be Birnie's property pursuant to the sisters' oral agreement.

The Federal estate tax return for the Estate of Elizabeth Davenport was prepared by Ms. Childs and was signed and filed by Patricia Vestal and Gordon Davenport. The estate tax return for the Estate of Elizabeth Davenport was examined by the IRS. The IRS took the position that the entire value of all assets held in Elizabeth's name should be included in her gross estate, and that the 3,220 shares of Hondo stock should be valued at $3,019 per

share.  The IRS issued a notice of deficiency, and the estate of Elizabeth Davenport petitioned this Court.  That case was captioned Estate of Davenport v. Commissioner, docket No. 26022-83.  For purposes of the Tax Court litigation, the estate of Elizabeth Davenport was represented by Patricia Vestal and Gordon Davenport.  Elizabeth's Federal estate tax case was settled by the parties without trial, and an agreed decision was entered on May 24, 1984.

An agreement was signed by Gordon Davenport on April 18, 1984, and by Patricia Vestal on April 22, 1984, in which the basis of the settlement agreement with regard to stock of Hondo was set forth.  In settling the case, the parties agreed that 1,610 shares of Hondo stock would be included in the gross estate of Elizabeth at a value of $2,400 per share.  The Commissioner conceded the ownership issue, recognizing the split of ownership of assets by Elizabeth and Birnie.

Birnie's last will and testament was drafted by Ms. Childs and was executed by Birnie on January 26, 1970.  Elizabeth's last will and testament was drafted by Ms. Childs and was executed by Elizabeth on January 26, 1970.  The sisters' wills contained mirror provisions.  Both wills contained provisions for the distribution of each sister's respective interest in Hondo stock. The provision for distribution of Hondo stock in each of the sisters' wills was consistent with their joint ownership agreement.

Birnie, Elizabeth, and Ms. Childs knew at all times relevant to this case that Elizabeth was the nominal owner of the 3,220 shares of stock of Hondo.  Patricia Vestal, Gordon Davenport, and Charles Botefuhr also knew at all times relevant to this case, from at least the date of Elizabeth's death, that Elizabeth was the nominal owner of 3,220 shares of Hondo stock.

Upon the death of Elizabeth in December 1979, the district court of Tulsa County undertook the probate of her estate.  As part of the probate of Elizabeth's estate, the court investigated the validity of the joint ownership of property by Elizabeth and Birnie.  On February 14, 1983, the district court of Tulsa County determined that while Elizabeth was the record owner of certain real and personal property, she owned only an undivided 50-percent interest in such property, and held an undivided 50-percent interest in such property for her sister Birnie.[5]  The district court of Tulsa County determined that each sister owned an undivided 50-percent interest in real and personal properties described in the attachment to its order.  The district court found that Elizabeth and Birnie each owned an undivided 50-

---

[5]  Petitioner, objecting to this finding of fact, states on brief that "This Order, along with an affidavit signed by Birnie M. Davenport, were both obtained to influence the then pending Protest and subsequent Tax Court case involving the Estate of Elizabeth G. Davenport with Respondent's predecessor."  We assume that petitioner is implying that, in her affidavit, Birnie misstated the facts or omitted relevant facts which caused the court to reach an incorrect conclusion.  Petitioner's objection is unfounded.

percent interest in the 3,220 shares of Hondo stock.  The court ordered, on February 14, 1983, that the coexecutors of Elizabeth's estate were to assign and convey to Birnie her 50-percent interest in the described real and personal property.

In 1980, shortly after Elizabeth died, Birnie decided to transfer all of her 1,610 shares of Hondo stock, in approximately equal portions to her niece and two nephews.  In order to transfer, among other items, the Hondo stock, Birnie entered into sales agreements with both Patricia Vestal and Gordon Davenport on July 2, 1980.  The sales agreements were dated July 2, 1980, but were executed by Birnie on September 26, 1980.  Pursuant to the sales agreements, Birnie sold 537 and 536 shares of Hondo stock to Gordon Davenport and Patricia Vestal, respectively.  As part of the sales agreements, Birnie, as seller, represented and covenanted that she was the sole owner of and had the right to sell all the shares of stock referred to in the sales agreements. In the sales agreements, Birnie, as seller, stated that the shares of stock referred to in the agreements were not to be disposed of except pursuant to the terms of the agreements.  In the sales agreements, Birnie promised to deliver good and marketable title to the shares of stock referred to in the sales agreements.  By the terms of the sales agreements, Birnie transferred to Patricia Vestal and Gordon Davenport the right to receive dividends paid after the date of the agreements with respect to the shares of stock transferred and the right to vote

the stock covered by the sales agreements. In consideration for the transfer of stock to them by Birnie, Gordon Davenport and Patricia Vestal executed installment notes, dated July 2, 1980, in the amounts of $449,175.50 and $448,353.50, respectively.[6] Patricia Vestal and Gordon Davenport each made downpayments in the amount of $1,000 to Birnie with respect to the transfer to them of Hondo stock and other stock, pursuant to the sales agreements and notes. Patricia Vestal and Gordon Davenport made interest payments due from them to Birnie under the terms of the sales agreement and installment notes until approximately March of 1982. On March 5, 1982, Birnie forgave the debts of Patricia Vestal and Gordon Davenport owed to her under the installment notes. On March 31, 1983, Birnie filed a Federal gift tax return for 1982 reflecting the forgiveness of the installment notes.

On July 7, 1980, Birnie executed a document titled Deed of Gift, memorializing her gift of 537 shares of Hondo stock to her nephew Charles Botefuhr. The deed of gift was made part of the public record by filing it in Tulsa County, Oklahoma. After the date of Elizabeth's death, but prior to July 1980, dividends paid with respect to Birnie's 1,610 shares of Hondo stock were paid out of Elizabeth's estate to Birnie. The payment of dividends with respect to Birnie's 1,610 shares of Hondo stock was not considered to be a distribution of property of Elizabeth's

---

[6] This represents a purchase price of $804 per share for the Hondo stock.

estate, as these dividends were considered to be Birnie's property, pursuant to the sisters' joint ownership agreement. Birnie reported the receipt of dividends paid in 1980, prior to July 1980, with respect to the 1,610 shares of Hondo stock on her 1980 Federal income tax return. After July of 1980, and before April of 1981, dividends paid with respect to the 1,610 shares of Hondo stock transferred by Birnie to her niece and two nephews were paid out of Elizabeth's estate directly to Patricia Vestal, Gordon Davenport, and Charles Botefuhr, in proportion to the stock they had received pursuant to the sales agreements and gift. Hondo typically paid dividends on or about March 1 of each year, in May of each year, and on or about August 31 of each year. The record ownership of 1,610 shares of Hondo stock was transferred on the stock ledger of Hondo from the name of Elizabeth Davenport to the names of Patricia Vestal (536 shares), Gordon Davenport (537 shares), and Charles Botefuhr (537 shares), on April 14, 1981. This transfer of ownership on Hondo's stock ledger of the 1,610 shares of stock was made pursuant to the direction of Gordon Davenport and Patricia Vestal. The transfer of title to the 1,610 shares of Hondo stock, 536 shares to Patricia Vestal, and 537 shares each to Gordon Davenport and Charles Botefuhr, was made to accomplish Birnie's intentions, and to complete the transfers made by the sales agreements and Deed of Gift. Patricia Vestal, Gordon Davenport, and Charles Botefuhr

received their interests in stock of Hondo from Birnie in July of 1980.

On November 28, 1980, Patricia Vestal, Gordon Davenport, and Charles Botefuhr executed an agreement. In the agreement it was recited that Charles Botefuhr had been given 537 shares of Hondo stock by instrument dated July 7, 1980, executed by Birnie Davenport. In the agreement it was recited that Charles Botefuhr had agreed with Birnie at the time of the gift of stock that he would file the requisite Federal and State gift tax returns and pay all taxes. Pursuant to the agreement, Charles Botefuhr agreed with Gordon Davenport and Patricia Vestal that he would file the gift tax returns with respect to the gift of July 7, 1980, and pay any gift taxes due with respect to the gift. Charles Botefuhr did not file any gift tax returns on behalf of Birnie.

Charles Botefuhr redeemed his 537 shares of Hondo stock on July 15, 1981, for $2,190 per share. Prior to redeeming his stock, Charles Botefuhr received dividends in 1981 with respect to his 537 shares of Hondo stock in the amount of $8,055. Gordon Davenport received dividends in 1981 with respect to his 537 shares of Hondo stock in the amount of $16,110.

While preparing Birnie's estate's tax returns, Ms. Childs discovered that no Federal gift tax return had been filed with respect to the Hondo stock transfer to Charles Botefuhr on July 7, 1980. She then prepared a gift tax return with respect to the

transaction and filed it simultaneously with the Federal estate tax return for Birnie's estate.

Elizabeth, Birnie, their estates, and the representatives of their estates, consistently represented to the IRS that Elizabeth and Birnie were joint and equal owners of various property, including Hondo stock, title to which was in Elizabeth's name.

Hondo stock was valued for all purposes by Elizabeth and her estate, Birnie and her estate, Patricia Vestal, and Gordon Davenport, at $804 per share. The $804 price of Hondo stock was determined by reference to the financial statement of Hondo of the price it would pay for redemptions of its stock in the fiscal year September 1, 1979, through August 31, 1980.[7]

The statutory notices of deficiency, on which this case is based, were mailed to petitioner on September 20, 1994.

OPINION

Petitioner's primary argument is as follows: Elizabeth and Birnie entered into a "business partnership" in which legal title to all of the partnership's assets was held in Elizabeth's name; following Elizabeth's death in 1979, Birnie failed to exercise her statutory rights as surviving partner to wind up the affairs of the business partnership and to distribute the assets of the partnership to the estate of her sister and herself; and finally,

---

[7] For purposes of this case, if we find that Birnie did transfer the stock in question, the parties have stipulated the fair market value of such stock was $2,000 per share at the time of the transfer.

that Birnie's failure to exercise her statutory rights operated as a waiver of her rights which allowed the partnership property to remain in Elizabeth's name subject to distribution by her executors in accordance with the terms of her will.

Agreement Between Birnie and Elizabeth

Respondent contends that no business partnership was formed and that the assets that the sisters acquired were merely personal assets which Birnie and Elizabeth jointly owned. Petitioner argues that because the sisters created a business partnership, Birnie's actions (or inaction) subsequent to Elizabeth's death resulted in the partnership's assets being left in Elizabeth's name and thus being disposed of through Elizabeth's estate with the consequence that Birnie did not have a sufficient interest in the Hondo stock to make a gift of that stock.

Section 301.7701-1(c), Proced. & Admin. Regs., provides, in pertinent part, as follows:

> Although it is the Internal Revenue Code rather than
> local law which establishes the tests or standards
> which will be applied in determining the classification
> in which an organization belongs, local law governs in
> determining whether the legal relationships which have
> been established in the formation of an organization
> are such that the standards are met.  Thus, it is local
> law which must be applied in determining such matters
> as the legal relationships of the members of the
> organization among themselves and with the public at
> large, and the interests of the members of the
> organization in its assets.

Because this dispute revolves around the property rights that each sister would have if the agreement created a partnership, we must look to Oklahoma State law to see if a partnership was created, and, if so, the consequences of such a classification.

In determining State law we will follow the decisions of the highest State court, but in the absence of a decision by that court, we may look to the State's lower courts' rulings and holdings. Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967). The burden of proof lies with petitioner. Rule 142(a). Additionally, under Oklahoma law, the burden of proving the existence of a partnership lies with the party which is attempting to rely on its existence--petitioner in this case. Byrd v. Byrd, 189 P.2d 927, 928 (Okla. 1948). "Partnership is a creature of voluntary agreement. A partnership relationship can be created by oral agreement but proof of the fact of partnership and its terms must be established, by 'clear, unequivocal and decisive' evidence. Oral testimony offered to prove these facts is not given much weight." Singer v. Singer, 634 P.2d 766, 770 (Okla. Ct. App. 1981) (fn. refs. omitted). A partnership is created by persons "for the purpose of carrying on a trade, business, or profession". United States v. Neel, 235 F.2d 395, 399 (10th Cir. 1956). Of primary importance in determining the existence of a partnership, given all of the facts and circumstances, is whether the parties, in good faith and with a

business purpose, intended to form a partnership.  <u>Commissioner v. Culbertson</u>, 337 U.S. 733 (1949).

We find that Elizabeth and Birnie did not intend to form a partnership but intended to share their incomes and property much as a married couple might.  References to a business partnership in certain documents as well as in some of the testimony presented at trial appears to be a loose description of the sisters' arrangement rather than an attempt to define the arrangement in legal terms.  We find Ms. Childs' description of the arrangement to be accurate when she stated:  "They had no written articles of partnership, no written agreements, it's just the way you did things.  Just as if someone in this room and I were to open an account and each put $5,000 in it and decide to invest it, we would just rock along and we'd each report our half of the gains and losses and that sort of thing."  Elizabeth and Birnie were not engaged in a "trade, business, or profession."  Although they combined their incomes into joint accounts and purchased various stocks, this merely amounted to co-ownership of the various accounts and stock.  The evidence fails to support a conclusion that the sisters had a business relationship.  On her 1980 Federal income tax return, Birnie reported dividends from only three companies in the amounts of $12,391, $48,300, and $1,350 and from the Estate of Elizabeth Davenport in the amount of $4,269.  Additionally, on her 1980 return, Birnie only reported long-term capital gains from the sale of three different

stocks and no short-term capital gains.  On the facts presented, we conclude that Birnie and Elizabeth were not in a business partnership but were merely co-owners of the 3,220 shares of Hondo stock.  See King v. Commissioner, 89 T.C. 445, 458-459 (1987) (an investor is never considered to be engaged in a trade or business with respect to his investment activities).

It has long been settled in Oklahoma that joint ownership of real or personal property does not necessarily constitute a partnership.  Logan v. Oklahoma Mill Co., 79 P. 103 (Okla. 1904).  Similarly, "Investment in oil and gas leases as cotenants or co-owners gives no presumption of the existence of partnership.  In fact, it is presumed, in the absence of a contrary showing, such ownership is merely a cotenancy."  Singer v. Singer, supra at 771 n.11 (citations omitted).

Petitioner places great reliance on Ryza v. Commissioner, T.C. Memo. 1977-64, in which this Court found two individuals were engaged in a partnership for Federal tax purposes.  Ryza is distinguishable from the instant case.  First, Ryza used Federal tax principles to determine if a partnership existed; in the instant case we look to Oklahoma law because the question of whether a partnership existed is relevant to determine if Birnie had a sufficient property interest such that she could make a gift of Hondo stock.  Second, even if we were to look to Federal tax cases for guidance, Ryza involved two taxpayers who conducted several businesses (buying, repairing, and selling Volkswagens,

an illegal abortion clinic, and a building company) in which they were each active participants in the business operations. In the instant case we are presented with two sisters who, through a regimen of frugal living, were able to amass a substantial amount of savings and assets. We find that Ryza is of no help in determining the existence of a partnership in this case. Elizabeth and Birnie were mere passive co-owners of property. Cf. Vanderschraaf v. Commissioner, T.C. Memo. 1997-306 (Partnerships did not constitute mere passive co-owners of property; partnerships entered into transactions, formed joint ventures, operated gas wells, and engaged in various other activities).[8]

The elements of a completed gift under Oklahoma law are: (1) Intention to give, (2) complete delivery, and (3) acceptance by the donee. In re Estate of Carano, 868 P.2d 699 (Okla. 1994); McSpadden v. Mahoney, 431 P.2d 432 (Okla. 1967). The sales agreements and the deed of gift as well as the testimony presented at trial convince us that Birnie intended to make full or partial gifts to her niece and nephews. After Birnie's

---

[8] Similarly, petitioner's reliance on McCleary v. Brown, 119 P.2d 830 (Okla. 1941), is misplaced. Petitioner relies on McCleary as authority for the proposition that a surviving partner's failure to assert his statutory right of possession to partnership property for dissolution constitutes a waiver of his rights. McCleary, like Ryza v. Commissioner, T.C. Memo. 1977-64, is distinguishable because it involves the active conduct of a business as opposed to the instant case which involves co-ownership of investments.

- 25 -

transfers, the recipients began receiving the dividends from the Hondo stock.  Based on all of the facts and circumstances presented in this case, we conclude that Birnie did intend to make present and irrevocable transfers of Hondo stock in July of 1980 to her niece and nephews.  We conclude that Birnie owned a 50-percent interest in the Hondo stock in 1980.  Because Birnie had a sufficient ownership interest[9] and the intent to make a gift of the Hondo stock, and there is no dispute as to any other element of a gift, we find that under Oklahoma law Birnie did make a completed gift of Hondo stock in July of 1980.

Statute of Limitations

Section 6501(a) provides generally that assessments of tax must be made within 3 years after the taxpayer files a return.

The Federal estate tax return for the Estate of Birnie Davenport was filed on November 7, 1991.  A Federal gift tax return for the taxable year 1980, signed by the co-personal representatives of the Estate of Birnie Davenport, was filed on behalf of Birnie on November 7, 1991.  Respondent mailed notices

_____

[9] Despite Birnie's lack of legal title, we find that her interest in the Hondo stock, like that of a tenant in common, was capable of being transferred.  See Starnes v. Miller, 505 P.2d 180, 182-183 (Okla. 1972).  Also, the fact that delivery of stock certificates was delayed did not prevent the gift from being complete in July of 1980.  Birnie, through the use of the sales agreements and deed of gift, accomplished sufficient delivery to put the gift beyond her dominion and control.  See Richardson v. Commissioner, T.C. Memo. 1984-595.

of deficiency regarding the estate and gift tax deficiencies on September 20, 1994.

Petitioner contends that

the previous ownership position of Respondent's predecessor as well as notification and subsequent acquiescence over a 12-year period by respondent following the filing of extensive income and gift tax returns by Birnie M. Davenport and her relatives allow Petitioner to assert that Respondent is under a 'duty of consistency' or is 'quasi estopped' to assert any gift or estate tax deficiency against Petitioner for gifts of Hondo stock by Birnie M. Davenport.

We disagree. The filing of the Federal estate and gift tax returns by Birnie's estate started the running of the periods of limitations on November 7, 1991. Respondent's notices of deficiency were mailed to petitioner on September 20, 1994, before the expiration of the period of limitations. We therefore find that the statute of limitations does not bar the assessment of additional estate and gift tax liabilities in this case.

Addition to Tax Under Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The taxpayer has the burden of proof to show the addition is improper. United States v. Boyle, 469 U.S. 241, 245 (1985).

Respondent determined that a Quarterly Gift Tax Return with respect to the July 1980 gifts was due to be filed on November

15, 1980. Secs. 6019, 6075(b). Petitioner has stipulated that the co-personal representatives of Birnie's estate filed a Federal gift tax return for the quarter ended September 30, 1980, on November 7, 1991. Petitioner has made no argument with respect to the section 6651(a)(1) addition to tax, except by implication of its argument that no gift was made. We rejected that argument supra, and petitioner has not proven that its failure to file timely was due to reasonable cause. Accordingly, we sustain respondent's determination of the applicable addition to tax under section 6651(a)(1).

To reflect the foregoing,

Appropriate orders will be issued, and decisions will be entered under Rule 155.