UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles E. BOTEFUHR, Defendant–
Appellant,

and

The Estate of Birnie Davenport; Patricia L. Vestal, individually and as Personal Representative of the Estate of Birnie Davenport; Gordon E. Davenport, Defendants.

United States of America,
Plaintiff–Appellee,

v.

Patricia L. Vestal, individually and as Personal Representative of the Estate of Birnie Davenport, Defendant–Appellant,

and

Charles E. Botefuhr; The Estate of Birnie Davenport; Gordon E. Davenport, Defendants.

United States of America,
Plaintiff–Appellee,

v.

Gordon E. Davenport, Defendant–
Appellant,

and

The Estate of Birnie M. Davenport; Patricia L. Vestal, individually and as Personal Representative of the Estate of Birnie Davenport; Charles E. Botebuhr, Defendants.

Nos. 01–5133, 01–5139, 01–5145.

United States Court of Appeals,
Tenth Circuit.

Oct. 31, 2002.

John N. Hermes, McAfee & Taft, A Professional Corporation, Oklahoma City, OK, (William R. Cook II, Oklahoma City, OK, and J. Scott Morris, Austin, Texas, with ʻhim on the reply brief), for Defendant–Appellant Charles E. Botefuhr.

Susan L. Gates, Hall, Estill, Hardwick, Gable, Golden, & Nelson, P.C., Tulsa, OK, for Defendant–Appellant Patricia L. Vestal.

Gordon E. Davenport, Jr., Davenport Law Firm, Alvin, Texas (James L. Kincaid and Gary C. Clark, Crowe & Dunlevy, Tulsa, OK, with him on the briefs) for Defendant–Appellant Gordon E. Davenport.

Laurie N. Snyder, Attorney, Tax Division, United States Department of Justice, Washington, D.C. (David E. O'Meila, United States Attorney, Of Counsel, Eileen J. O'Connor, Assistant Attorney General, Jonathan S. Cohen, Attorney, Tax Division, United States Department of Justice, Washington, D.C., with her on the brief), appeared for the Plaintiff–Appellee.

Before EBEL and McKAY, Circuit Judges, and SAM,\* Senior District Judge.

EBEL, Circuit Judge.

Defendants–Appellants Patricia A. Vestal, Gordon E. Davenport, and Charles E. Botefuhr appeal a summary judgment order by the United States District Court for the Northern District of Oklahoma granting summary judgment upholding the Internal Revenue Service's (IRS) right to collect gift taxes from them under § 6324(b) of the Internal Revenue Code (IRC). *See* 26 U.S.C. § 6324(b). On appeal, the Appellants raise three issues: first, whether the district court had personal jurisdiction over Botefuhr and Davenport; second, whether the statute of limitations for collecting taxes under § 6324(b) has expired;[1] and third, whether, based upon a stipulation in a prior, related case, the Appellants are precluded from litigating the value of the Hondo stock in the present action. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **REVERSE** the district court on the personal jurisdiction question, **AFFIRM**

---

\* The Honorable David Sam, Senior District Judge, United States District Court for the District of Utah, sitting by designation.

1. All references to "Davenport" are to Gordon E. Davenport. Birnie M. Davenport, the Appellants' aunt and the donor of the disputed gifts, is referred to as "Birnie Davenport."

on the statute of limitations question, and **REVERSE** on the valuation question.

## I. BACKGROUND

In July 1980, Birnie Davenport, Botefuhr's, Davenport's, and Vestal's aunt, gave a total of 1,620 shares of Hondo Drilling Company, Inc. (Hondo) stock to Botefuhr, Davenport, and Vestal, but she effectuated these transfers in two different ways. She entered into sales agreements with Davenport and Vestal, whereby she agreed to sell Vestal 536 shares of Hondo stock and Davenport 537 shares. *See Estate of Davenport v. United States,* 184 F.3d 1176, 1179 (10th Cir.1999). The sales agreements valued the shares at $804 per share. As consideration for the stock, Birnie Davenport received $1,000.00 in cash from Davenport and Vestal, and Davenport and Vestal executed promissory notes in which they agreed to pay Birnie Davenport $449,175.50 and $448,353.50, respectively, in twenty annual installments, beginning in July 1986; the agreements also required Vestal and Davenport to pay "six percent interest annually on the unpaid principal." *Estate of Davenport,* 184 F.3d at 1179.

Less than two years after the sale and over four years before Davenport and Vestal were to commence paying their promissory notes, Birnie Davenport forgave the balances remaining on the notes.[2] *Id.* at 1180. On March 31, 1983, Birnie Davenport filed a United States Gift Tax Return in which she reported forgiving the promissory notes and, after applying various discount rates, reported and paid $71,911.00 in gift tax liability.

Birnie Davenport transferred the Hondo stock to Botefuhr in a different manner. Instead of entering a sales agreement, as she had with Davenport and Vestal, Birnie Davenport executed a deed of gift trans-

ferring to him 537 shares of Hondo stock. *Id.* In the fall 1980, Botefuhr, Davenport, and Vestal signed an agreement in which Botefuhr "agreed to file any required gift tax returns and pay any gift taxes due with respect to the Hondo stock he received from Birnie [Davenport.]" *Id.* Botefuhr, however, never filed a gift tax return for this gift.

In 1991, Birnie Davenport passed away. Her last will and testament were admitted to probate in Tulsa, Oklahoma, and Botefuhr, Davenport, and Vestal, "were appointed by the probate court to act as co-personal representatives" of Birnie Davenport's estate (the Estate). While preparing tax returns for the Estate, Corinne Childs, who had prepared tax returns for Birnie Davenport since 1965, uncovered Botefuhr's failure to file a gift tax return for his shares of Hondo stock. Consequently, on November 7, 1991, Childs filed a gift tax return for the 1980 gift to Botefuhr, which both Vestal and Davenport signed, but which Botefuhr did not. *Id.* at at 1180–81. The return valued the Hondo stock at $804 per share and reported a tax liability of $95,322.00, which the Estate paid. *Id.*

The IRS subsequently audited this 1991 gift tax return and in the process concluded that the gift tax return underreported the value of Hondo stock. In the process, the IRS also concluded that the shares Birnie Davenport sold to Davenport and Vestal were also gifts, apparently because they were sold at a discounted price. Consequently, on September 20, 1994, the IRS sent the Estate a notice of deficiency indicating a "gift tax deficiency of $1,422,154.00 and an addition to the tax of $355,538.00." 184 F.3d at 1181. On December 12, 1994, the Estate, through Vestal, filed timely petitions in the United States Tax Court challenging this deficien-

---

**2.** Vestal claims that she and Davenport each paid approximately $40,000.00 in interest on the unpaid principal before Birnie Davenport forgave the notes.

cy determination. In the ensuing court proceedings, the Estate (again represented by Vestal) stipulated that "for the purposes of th[at] case[ ]" "the fair market value of the Hondo stock which was transferred by Birnie Davenport to Patricia Vestal, Gordon Davenport, and Charles Botefuhr was $2,000.00 per share." (Vestal App. at 219.) After holding a bench trial, the tax court concluded that the Estate "owed a federal gift tax deficiency in the amount of $822,653 and a penalty of $205,663." 184 F.3d at 1180. The Estate then appealed this finding to this court, and we affirmed. *See id.* at 1188.

On March 2, 1998, the IRS made an assessment against the Estate for the gift tax deficiency and demanded payment.[3] The Estate, however, did not pay the assessment. As of 1999, the Estate owed $5,283,283.07 in gift tax liability, penalties, and interest. Prompted by the Estate's failure to pay, the IRS brought (on February 2, 2000) the present action against the Estate and also against Botefuhr, Davenport, and Vestal in their representative and individual capacities. The underlying complaint contained three counts. Count I sought to reduce to judgment the unpaid assessment levied against the Estate. The remaining counts, however, sought to collect at least some of the outstanding gift tax liability from Botefuhr, Davenport, and Vestal. Count II, for example, asserted that Botefuhr, Davenport, and Vestal could be held liable for the unpaid gift tax as donees under 26 U.S.C. § 6324(b). Similarly, Count III alleged that, as personal representatives of the Estate, Botefuhr, Davenport, and Vestal could be held re-

sponsible under 31 U.S.C. § 3713 for having distributed the Estate's assets prior to paying the gift tax liability, thereby "render[ing] the Estate insolvent and unable to pay the federal gift tax liability." [4]

In the spring 2000, Botefuhr and Davenport, both residents of Texas, each filed motions pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure arguing that the suits against them should be dismissed because the district court lacked personal jurisdiction, an argument the court eventually rejected a year later.

On February 9, 2001, while the personal jurisdiction motion was still pending before the district court, the IRS filed a motion seeking summary judgment on Count I (estate liability) and Count II (individual donee liability under 26 U.S.C. § 6324), but declining to seek summary judgment on Count III (liability as estate representatives). In its motion, the IRS also argued that the Appellants were precluded from litigating the value of the gift. In particular, the IRS argued that Botefuhr's, Davenport's, and Vestal's individual tax liability should be determined using the $2,000.00 per share figure stipulated by the Estate (via Vestal) in the prior litigation involving the estate. Botefuhr, Davenport, and Vestal responded by filing a joint motion that sought summary judgment on Count II (donee liability) and Count III (representative liability), but that conceded liability on Count I (estate liability). They also argued that they were not bound by the Estate's $2,000.00 per share stipulation. In replying to the Appellants' joint cross motion for summary judgment, the IRS expressly abandoned

**3.** According to the IRS, an assessment, which "is essentially an internal bookkeeping procedure, whereby the amount of a taxpayer's tax liability is recorded in the records of the IRS," "permits the IRS to begin collecting the tax using summary administrative collection methods ..., or by proceeding in court and serves as a benchmark for computing the

timeliness of such collection methods." (Aple. B. at 20–21, citing § 6502(a).)

**4.** Section 3713 makes representatives of an estate personally liable for paying "any part of a debt of the person or estate before paying a claim of the Government." 31 U.S.C. § 3713(b).

Count III, thus reducing the remaining issues in the case to one overarching substantive question—whether Botefuhr, Davenport, and Vestal, as donees, could be held personally liable for the gift tax deficiency under 26 U.S.C. § 6324(b)—and a subsidiary question—whether Botefuhr, Davenport, and Vestal were bound by the $2,000.00 per share stipulation made by the Estate before the tax court.

■ The district court concluded that the Appellants could be held liable under § 6324(b) and that they were bound by the $2,000.00 per share valuation. Accordingly, the district court found Botefuhr's liability to be "536 shares multiplied by [$2,000.00 per share], or $1,072,000.00." *United States v. Estate of Davenport*, 159 F.Supp.2d 1330, 1336 (N.D.Okla.2001). The court calculated Davenport's and Vestal's liability in a similar manner, but then reduced their total liability by "the amount [they] paid for the stock ($804 per share)." *Id.* Thus, the court concluded that Davenport, who received 537 shares, owed $642,252.00, and that Vestal, who was given 536 shares, owed $641,056.00.[5] *Id.* This appeal followed.

## II. STANDARD OF REVIEW

■ We review a grant of summary judgment de novo and "apply the same legal standard as the district court. Summary judgment is proper if the movant shows 'there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir.2000) (other internal quotation marks and citations omitted). "We review the district court's jurisdictional ruling de novo and resolve all factual disputes in favor of [the] plaintiff." *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

## III. PERSONAL JURISDICTION

We turn first to the threshold question of whether the district court erred in asserting personal jurisdiction over Botefuhr and Davenport. In rejecting Botefuhr's and Davenport's motions to dismiss, the district court relied heavily upon Count III of the IRS's complaint, which asserted that Botefuhr and Davenport violated 31 U.S.C. § 3713 by depleting Birnie Davenport's Estate "of all its assets without satisfying the gift tax liability." (March 29, 2001 Order at 1.) The district court concluded that because Botefuhr and Davenport had been appointed representatives of Birnie Davenport's estate, they could easily anticipate being sued for a violation of § 3713 in Oklahoma for their conduct concerning the Estate.[6] The court, however, found

---

**5.** A portion of these sums included interest assessed on the unpaid tax liability. The parties do not specifically challenge the assessment of interest on this appeal. In any event, under established precedent, a donee may be held liable for interest associated with a donor's gift tax liability. *See, e.g., Poinier v. Commissioner*, 858 F.2d 917, 922 (3d Cir. 1988) ("Donees are liable for one type of interest: interest calculated from the day the gift tax is due until it is paid."); Francis M. Dougherty, Annotation, *Federal Gift Tax: Donee's Liability for Gift Tax or Interest on Gift Tax*, 99 A.L.R. Fed. 447, § 2(a) at 450 (1990)

("[T]he donee may also be liable for any interest that arises from the failure of the donor to pay the gift tax fully.").

**6.** The district court, applying factors identified by the Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), found that five reasons justified finding personal jurisdiction in this case over the § 3713 claim: first, because Botefuhr and Davenport were representatives of the Estate, they could not be "complete[ly] surprise[d] by the suit"; second, because Birnie Davenport lived in

jurisdiction over the IRS's donee liability claim under 26 U.S.C. § 6324 in Count II "far more problematic." Nonetheless, the district court reasoned that if it possessed jurisdiction over the § 3713 claim (Count III), which went to Botefuhr's and Davenport's personal liability for their actions as representatives of the Estate, it also possessed jurisdiction over the § 6324 claim (Count II), which concerned Botefuhr's and Davenport's liability as gift recipients, or donees. (*Id.* at 5, citing *Nelson v. R. Greenspan & Co.*, 613 F.Supp. 342, 346 (E.D.Mo.1985).) After making this finding, however, the court announced that it would "reserve[ ] the right to review the basis for jurisdiction" in later proceedings.

Less than two weeks after this ruling, the government dropped the § 3713 count. *Estate of Birnie Davenport*, 159 F.Supp.2d at 1332. Consequently, the court dismissed this claim; however, in that order the court refused to reexamine its personal jurisdiction ruling over the § 6324 claim, and observed that because Botefuhr and Davenport had not presented any "additional evidence" negating its previous ruling that the government "had made out a prima facie case of personal jurisdiction," it would "decline[ ] to dismiss Count II for lack of personal jurisdiction." *Id.* at 1335–36. For the reasons discussed below, we conclude the district court committed reversible error.

### A. *General Legal Background*

 Unless Congress specifically indicates otherwise, there are two limits on a federal court's ability to assert personal jurisdiction. First, a federal district court may only exercise personal jurisdiction over a defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed. R.Civ.P. 4(k)(1)(A). Second, in addition to satisfying this state law requirement, the exercise of personal jurisdiction must "not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir.1995). Because this case comes from the United States District Court for the Northern District of Oklahoma, we must apply Oklahoma law. Oklahoma, however, "permits the exercise of any jurisdiction that is consistent with the United States Constitution." *Intercon, Inc.*, 205 F.3d at 1247. Consequently, whether the district court properly exercised personal jurisdiction over Botefuhr and Davenport, "collapses into a single due process analysis" under the Constitution. *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir.1988).

 "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the'" *Intercon, Inc.*, 205 F.3d at 1247 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Depending on the level of contact, personal jurisdiction may be either specific, in which case personal jurisdiction is based on specific activities or contacts the defendant had with the forum state, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), or it may be general, in which case jurisdiction is based

Oklahoma and had her estate probated in Oklahoma, Oklahoma was the "most logical" forum for pursuing a suit related to the Estate; third, the government should not be burdened by traveling to Botefuhr's and Davenport's home districts when they had agreed to serve as representatives of the Es-

tate; fourth, it would be a better use of judicial resources to hear the cases in a common court; and fifth, exercising jurisdiction "would further the substantive social policies of judicial efficiency and accountability of estate representatives." (March 29, 2001 Order at 3–4.)

upon "continuous or systematic contacts" between the defendant and the forum state. *Rambo*, 839 F.2d at 1418. Under either theory of jurisdiction, the defendant's contacts must be substantial enough so that exercising personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Far West Capital*, 46 F.3d at 1074 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). This requirement will be satisfied where, after reviewing the defendant's interactions and connections with the forum state, a court can conclude that the defendant has " 'purposefully availed' [himself] of the protection and benefits of the laws of the forum state." *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir.1994) (quoting *Burger King Corp.*, 471 U.S. at 473–76, 105 S.Ct. 2174).

The IRS does not claim that Oklahoma courts possess "general jurisdiction" over Botefuhr and Davenport. Nor does the government ever suggest that Botefuhr and Davenport, *in their capacities as donees*, reached out to Oklahoma or otherwise availed themselves of the state's laws. Instead, it argues, as it did below, only that because the district court had jurisdiction over Botefuhr and Davenport for the alleged § 3713 violation in their capacity as representatives of the estate, it also had jurisdiction over the § 6324 claim, which it argues "arose out of the same core facts."

### B. *Pendent Personal Jurisdiction*

▆▆▆▆ Thus, the central jurisdictional issue in this case is one of "pendent personal jurisdiction." Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim. *See, generally*, 4A Charles Alan Wright & Arthur A. Miller, *Federal Practice & Procedure* § 1069.7 (3d ed.2002); Linda Sandstrom Simard, *Exploring the Limits of Specific Personal Jurisdiction*, 62 Ohio St. L.J. 1619, 1622–27 (2001). In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction. *Anderson v. Century Prods. Co.*, 943 F.Supp. 137, 145 (D.N.H.1996).

The concept of pendent personal jurisdiction traces its origins to "federal question cases where state law claims were tacked onto federal causes of action under pendent [or supplemental] subject matter jurisdiction."[7] *Id.* at 144. Though originally a court-created concept, Congress later endorsed and codified the concept of supplemental subject matter jurisdiction. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). By

---

**7.** We adopt the modern approach of referring to "pendent subject matter jurisdiction" as "supplemental subject matter jurisdiction." Because, however, pendent personal jurisdiction remains a court-created creature that has not yet been sanctioned by Congress, we will use the term pendent when referring to it. *See* 4A Wright & Miller, *supra*, § 1069.7, at 227 (referring to pendent personal jurisdiction and supplemental subject matter jurisdiction because only the latter has been statutorily authorized).

contrast, pendent personal jurisdiction is not explicitly authorized by statute and remains, at least in the view of most commentators, "a federal common law doctrine." 4A Miller & Wright, *supra,* § 1069.7, at 227 (arguing that § 1367 cannot be read as authorizing pendent personal jurisdiction and explaining that the concept "must be properly understood to be a federal common law doctrine").

However, the majority of federal district courts and every circuit court of appeals to address the question have upheld the application of pendent personal jurisdiction, and we see no reason why, in certain situations, the assertion of pendent personal jurisdiction would be inappropriate. *See Starlight Int'l, Inc. v. Herlihy,* 13 F.Supp.2d 1178, 1185 (D.Kan.1998) (explaining that "every circuit court confronting the issue has ... upheld the principle of pendent personal jurisdiction"); 4A Wright & Miller, *supra,* § 1069.7, at 228 (explaining that "most federal courts that have dealt with the subject" have adopted the pendent personal jurisdiction doctrine); *Simard, supra,* at 1625–26 & nn. 24–26 (collecting cases and explaining how the majority of federal courts have upheld pendent personal jurisdiction); *see also Robinson Eng'g Co. Ltd. Pension Plan & Trust v. George,* 223 F.3d 445, 449 (7th Cir.2000) (explaining that a district court properly invoked pendent personal jurisdiction over a RICO claim that arose "out of the same nucleus of operative fact" as a federal securities claim); *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 628–29 (4th Cir.1997) (analogizing to supplemental subject matter jurisdiction and adopting the doctrine of pendent personal jurisdiction); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056 (2d Cir.1993) (explaining that pendent personal jurisdiction may be invoked for related state law claims "even if personal jurisdiction is not otherwise available"); *Oetiker v. Jurid Werke, G.m.b.H.,* 556 F.2d 1, 4–5 & n. 10 (D.C.Cir.1977) (collecting cases and adopting pendent personal jurisdiction); *Clapsaddle v. Telscape Int'l, Inc.,* 50 F.Supp.2d 1086, 1090 (D.N.M.1998) (applying pendent personal jurisdiction principles). Like these courts and commentators, we agree that where claims "arise from the same common nucleus of operative fact" "the inconvenience to a defendant ... is not [necessarily] sufficient to dismiss ... for lack of personal jurisdiction." 4A Wright & Miller, *supra,* § 1069.7, at 228.

■ Of course, even where a court could legally exercise pendent personal jurisdiction over a claim, a district court retains discretion. *See Oetiker,* 556 F.2d at 5 (explaining that a district court has discretion over whether to "exercise jurisdiction over the personal pendent jurisdiction claims"); 4A Wright & Miller, *supra,* § 1069.7, at 235–36 (explaining that courts have "the discretion to decline to exercise pendent personal jurisdiction"). Generally, when a district court dismisses the federal claims, leaving only supplemented state claims, "the most common response ... has been to dismiss the state claim or claims without prejudice." *Ball v. Renner,* 54 F.3d 664, 669 (10th Cir.1995). Indeed, while we have suggested that it is appropriate, perhaps even advisable, for a district court to retain supplemented state claims after dismissing all federal questions when the parties have already expended a great deal of time and energy on the state law claims, *see Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 541 (10th Cir.1995), we have held that, absent such a showing, a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial. *See Ball,* 54 F.3d at 669; *Sawyer v. County of Creek,* 908 F.2d 663, 668 (10th Cir.1990) ("Because we dismiss the federal causes of action prior to trial, we hold that the state

claims should be dismissed for lack of pendent jurisdiction."). These holdings draw support from Supreme Court precedent. *See, e.g., Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 & n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (explaining that in the "usual case" a district court will or should dismiss state claims when "federal-law claims have dropped out of the lawsuit in its early stages"); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

█ We need not resolve the precise contours of pendent personal jurisdiction in this case. Even if we assume (1) that the § 3713 count was a proper anchor claim and (2) that the § 3713 and § 6324 claim arose from a common nucleus of operative facts, we hold that the district court abused its discretion by retaining jurisdiction over the § 6324 claims after its pretrial dismissal of the § 3713 count.

First, it is important to note that the district court considered its assertion of personal jurisdiction over the § 6324 claim "problematic" from the start and only justified its decision to assert jurisdiction on the fact that it possessed personal jurisdiction over Botefuhr and Davenport on the § 3713 count. Moreover, even after reaching this conclusion, the district court reserved the right "to review the basis for jurisdiction, particularly as to Count II." Second, the anchor count, the alleged violation of § 3713, dropped out of this litigation before trial, *Estate of Davenport,* 159 F.Supp.2d at 1332 (explaining that the IRS

withdrew Count III during summary judgment proceedings), and less than two weeks after the district court made its personal jurisdiction ruling. Also importantly, this count disappeared from the litigation not because the district court found it to be without legal merit, but because the IRS—the party asserting the claim—voluntarily withdrew it within days of the court using it as a basis for asserting personal jurisdiction. *See also Olin Corp. v. Fisons PLC,* 47 F.Supp.2d 151, 155 (D.Mass.1999) (dismissing pendent personal jurisdiction claims after dismissing anchor claims). Third, neither the district court nor the IRS have identified any persuasive reason for retaining personal jurisdiction following the dismissal of the § 3713 count. Indeed, the IRS merely reasserts that because the district court had personal jurisdiction over the § 3713 claim, it also had jurisdiction over the § 6324 claim, never discussing whether or how the legal analysis changed once the § 3713 count dropped out of the litigation. Similarly, the district court simply held that because no "additional evidence" had been presented on the personal jurisdiction question, it retained jurisdiction over the § 6324 claim, even following the IRS's withdrawal of the § 3713 claim. *Estate of Davenport,* 159 F.Supp.2d at 1335. This conclusion, however, ignores the fact that once the § 3713 count disappeared, there was no claim before the district court for which it could be said Botefuhr and Davenport had "minimum contacts" with Oklahoma.

Consequently, we reverse the district court's conclusion that it had personal jurisdiction over Botefuhr and Davenport.[8]

---

8. In its brief, the IRS requested that in the event we concluded that the district court lacked personal jurisdiction over Botefuhr and Davenport, we remand with instructions that the district court transfer this case "to the district court[s] in which the action[s]

should have been brought." Under 28 U.S.C. § 1631, a court "shall" transfer actions over which it lacks jurisdiction, if it concludes that a transfer "is in the interest of justice." Courts have construed this language as giving district courts considerable discretion in de-

## IV. LIABILITY UNDER § 6324

Because we conclude that the district court lacked personal jurisdiction over Botefuhr and Davenport, we do not address the other arguments they raised on appeal. Therefore, the remaining question in this case is whether Vestal can be held liable under § 6324 for the Estate's gift tax deficiency. Before the district court, Botefuhr, Davenport, and Vestal filed a joint brief in which they argued that § 6324(b)'s personal liability provision has, like the lien provision, a ten-year limitation period, which has long since expired. Alternatively, they contended that if § 6324(b)'s personal liability provision was not subject to a ten-year limitations period, it was governed by another provision of the IRC, § 6901, whose statute of limitations period has also lapsed. The district court rejected both arguments and concluded that a different provision of the IRC, § 6502, established the statute of limitations for holding donees personally liable for the gift tax. *Estate of Davenport,* 159 F.Supp.2d at 1334–35. In addition to reasserting these arguments, Vestal argues for the first time on appeal that the statute of limitations for bringing an action under § 6324 has lapsed because returns filed by Birnie Davenport in the early 1980s placed the IRS on notice of the gifts. Given the posture of this case, we disagree. Vestal argues, among other reasons, that the IRS is prohibited from collecting the deficiency under § 6324 because the relevant statute of limitations for bringing such an action has lapsed and because it would be inequitable. We disagree.

### A. *General Legal Background*

Subject to various qualifications, the IRC imposes tax liability "on transfers of property by gift," *Estate of Davenport,* 184 F.3d at 1181; *see* 26 U.S.C. §§ 2501–54, and defines gifts as including transfers of property for "less than an adequate and full consideration in money or money's worth." *Id.* § 2512(b). Generally speaking, the party that makes the gift, the donor, bears primary responsibility for paying any tax liability associated with the gift. *See* 26 U.S.C. § 2502(c) ("The tax imposed by § 2501 shall be paid by the donor."); *Fletcher Trust Co. v. Commissioner,* 141 F.2d 36, 39 (7th Cir.1944) ("The provisions of the Act … make plain … that the liability of the donor is primary. …").

Where, however, the donor completely fails to pay or only partially satisfies the federal gift tax, the recipient of the gift, the donee, can be held liable for the donor's tax deficiency, "at least to the extent of the value of the gift." Dougherty, *supra* note 5, § 2(a), at 450; *see generally* Gregory A. Byron, *Transferee Liability Under Section 6324: Defining the Extent of a Transferee's Liability for Interest,* 32 Idaho L.Rev. 383 (1996). Section 6324 of the IRC expressly establishes this "transferee" or "donee" liability for gift tax, *Mississippi Valley Trust Co. v. Commissioner,* 147 F.2d 186, 187 (8th Cir.1945); *Fletcher,* 141 F.2d at 39, and provides in relevant part:

> [U]nless the gift tax … is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10

ciding whether a § 1631 transfer would be appropriate. *Phillips v. Seiter,* 173 F.3d 609, 610 (7th Cir.1999) (collecting cases and explaining that because "the term 'interest of justice' is vague, district courts have a good deal of discretion in deciding whether to transfer a case"). Therefore, the district court can consider the appropriateness of a transfer on remand, but we refrain from ordering a transfer.

years from the date the gifts are made. *If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift.*

26 U.S.C. § 6324(b) (emphasis added).[9]

 Thus, § 6324 provides both for a ten-year lien and it also makes a donee personally liable for any gift tax deficiency. Courts have emphasized that this liability arises the *instant* the donor fails to pay the tax. *See Poinier v. Commissioner,* 858 F.2d 917, 920 (3d Cir.1988) ("Since a gift tax was due and unpaid, the donees are liable for its payment"); *Mississippi Valley Trust,* 147 F.2d at 187–88 ("If the donor fails to pay the automatically imposed tax when due, in accordance with the statute, no matter what the reason for his failure, there is an immediate and direct liability on the donee for the legally-owed tax, to the extent of the value of the gift."); *Fletcher Trust,* 141 F.2d at 39. Moreover, the donee's liability, though derivative in the sense that it arises only after the donor fails to pay the gift tax when due, exists regardless of whether the donor is solvent. *La Fortune v. Commissioner,* 263 F.2d 186, 194 (10th Cir.1958) ("Solvency or insolvency of the donor is immaterial. . . ."); *Baur v. Commissioner,* 145 F.2d 338, 340 (3d Cir.1944) ("[I]t is wholly immaterial to the enforcement of the legal liability whether the transfers rendered the donor insolvent or whether he remained solvent during the period of his enforceable liability for the tax."). Indeed, once the donor fails to pay the underlying gift tax, the IRS may elect to collect the tax from either the donor or the donee, and need not take any direct action against the donor before pursuing the donee. *La Fortune,* 263 F.2d at 194 ("[A]ssertion of a deficiency against a donor is not required."); *see also Mississippi Valley Trust,* 147 F.2d at 188 (explaining that the donee's liability is not "contingent or dependent upon a formal determination of deficiency against the donor or upon any other steps to collect from him"); *Fletcher Trust,* 141 F.2d at 39 ("Neither do we think that notice to the donor is essential in order to maintain a proceeding against transferees. . . .").

Courts have also held that under § 6324, a donee is liable, to the extent of the value of that donee's gift, for *any* gift tax incurred by the donor during the year in which the donee received a gift, *regardless of whether* that individual donee's gift actually contributed to the donor's gift tax deficiency. As this court explained years ago, "The statute clearly imposes liability on any donee gift during the year and hence the fact that the deficiency exists because of a gift to another makes no difference." *La Fortune,* 263 F.2d at 194; *see also Want v. Commissioner,* 280 F.2d 777, 781 (2d Cir.1960) (Friendly, J.) (explaining that a donee is liable "not only for the tax owing on the gift to him but also for the tax due on all other gifts made by the donor during the calendar year"); *Baur,* 145 F.2d at 339 (same); *see also* Dougherty, *supra* note 5, at 451 ("[T]he donor may also be held liable for the tax on gifts made by the donor in the same calendar year.").

---

**9.** Section 6324(a) of the IRC creates a parallel lien against transferees for any unpaid estate tax and also makes such "transferees" personally liable. 26 U.S.C. § 6324(a)(1)-(2). Courts have held that the gift tax and estate tax provisions "are in *pari materia* and must be construed together." *Estate of Sanford v. Commissioner,* 308 U.S. 39, 44, 60 S.Ct. 51, 84 L.Ed. 20 (1939); *see also New England Acceptance Corp. v. United States,* 35 F.Supp.2d 53, 56 n. 4 (D.N.H.1997); *Estate of Mandels v. Commissioner,* 64 T.C. 61, 74 n. 6, 1975 WL 3100 (1975) (both explaining how the two provisions are interpreted in pari materia). Consequently, our discussion of donee liability will refer to cases arising under both §§ 6324(a) and 6324(b).

## B. Section 6324's Ten–Year Lien Limit as Statute of Limitations

 Vestal initially argues that the IRS cannot pursue its action against her because the period for bringing a § 6324 action has lapsed. In particular, Vestal contends that the ten-year limit on § 6324's special lien also applies to § 6324's personal liability provision. As the IRS concedes, the time period for enforcing § 6324's lien has lapsed. *See Estate of Birnie Davenport,* 159 F.Supp.2d at 1333. Contrary to Vestal's suggestions, we do not believe that the lapsing of § 6324's lien provision prevents the IRS from collecting tax deficiencies under the section's personal liability provision.

Section 6324(b) draws a clear distinction between the special lien imposed on the gift received by the donee and the donee's personal liability for gift tax incurred by the donor. The statute, for instance, creates in one sentence the ten-year special lien on the gifted property and then states in the following sentence: "If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift." 26 U.S.C. § 6324(b). As outlined above, courts interpreting this provision have routinely analyzed the personal liability prong of § 6324 independent from and without reference to the lien provision. *See, e.g., La Fortune,* 263 F.2d at 194; *Mississippi Valley Trust,* 147 F.2d at 187–88; *Baur,* 145 F.2d at 339; *see also Tilton v. Commissioner,* 88 T.C. 590, 594, 1987 WL 39956 (1987) ("It will be observed that [the language of 6324(b)] imposes a lien upon any gift to secure payment of the tax *and,* if the tax is not paid when due, personal liability on the donee to the extent of the value of such gift." (internal quotation marks deleted and emphasis added).)

This distinction is significant, because § 6324(b) does not explicitly state a statute of limitations for a donee's personal liability. Moreover, the relatively few cases to have considered the issue suggest that the statute of limitations for the donee's liability depends upon the statute of limitations for the donor's liability: so long as the government could bring a timely action against the donor, its action against the donee will be considered timely. *Cf. United States v. Wright,* 57 F.3d 561, 564 (7th Cir.1995) (explaining that "suits against persons derivatively liable for taxes are timely, or not, according to the rules for timeliness against taxpayers"). The few courts that have considered this issue directly in the context of § 6324 have looked at the generally applicable statutes of limitations created under § 6501 and § 6502 of the IRC, and they have reasoned that if the suit would be timely brought against the donor under these provisions, it will be considered timely against the donee or transferee. *See United States v. DeGroft,* 539 F.Supp. 42, 44 (D.Md.1981) (holding that § 6502 established the statute of limitations for holding a transferee personally liable, not § 6324's lien provision); *see also United States v. Geniviva,* Civ. A. No. 92–1045, 1993 WL 597442, at *2–*3 (W.D.Pa. Apr.14, 1993) (same), *aff'd,* 16 F.3d 522 (3d Cir.1994); *United States v. Warner,* No. 83 CIV 3717(LBS), 1985 WL 2575, at *5 (S.D.N.Y. Sept.18, 1985); *United States v. Russell,* Civ. A. No. KC–2953, 1974 WL 727, at *3 (D.Kan. Oct.17, 1974) (holding that § 6502 "is the applicable statute of limitations to actions brought under § 6324(a)(2), and that an action timely brought against a transferor would be timely against the transferee)", *aff'd,* 532 F.2d 175, 176 (10th Cir.1976) (acknowledging district court's holding but noting that that holding was not at issue on appeal); *cf. United States v. Updike,* 281 U.S. 489, 494, 50 S.Ct. 367, 74 L.Ed. 984 (1930) (holding that if the "period of limitation runs in favor of the [transferor]," it has also "run in favor of the transferees");

*see also* Walter D. Schwidetzky, *Heirs May Face Open–Ended Liability*, 54 Tax'n for Acct. 208, 210 (1995) ("The Service must bring an action to collect the tax liability arising under § 6324(a) within the . . . collection period specified in § 6502.").

In pertinent part, § 6501 of the IRC provides that the IRS must assess a taxpayer "within three years after the return was filed." 26 U.S.C. § 6501(a). Section 6502, in turn, provides that the IRS must collect any assessed tax "by levy or by a proceeding in court" commenced "within ten years after the assessment of that tax." *Id.* § 6502(a)(1).

In this case the parties concede, or at least have failed to contest, that the IRS made a timely assessment against Birnie Davenport's estate on March 2, 1998. *Estate of Davenport*, 159 F.Supp.2d at 1334–35. As a result, the IRS had until March 2, 2008, to commence a court proceeding to collect the gift tax liability from the Estate, 26 U.S.C. § 6502(a). In fact, the Estate conceded its liability for the gift tax before the district court.[10] *Id.* at 1332. Therefore, because the IRS is acting within the time period in which it could act against the donor, Birnie Davenport, its case against Vestal as a donee is timely.[11]

Vestal's only significant response is to argue that legislative history suggests that Congress "intended, through its ten-year

lien provision, to provide a statute of limitations for the collection of taxes due on unpaid estate and gift taxes." In making this argument, she quotes the following from a 1966 Senate Report:

> In general terms, these modifications are intended to represent a reasonable accommodation of the interests of the Government in collecting the taxes of delinquent taxpayers with the rights of taxpayers and third parties. The modifications are concerned with the procedures for levying upon property of a delinquent taxpayer, the liability of lenders, sureties, etc., for withholding taxes, the running of statutes of limitations in the case of delinquent tax liabilities, procedures arising out of, or with respect to the sale of property of delinquent taxpayers, the court procedures to be followed with respect to tax liens, and provision for the redemption of real property by the United States, where it is sold by a creditor with a higher priority.
>
> . . . .
>
> The bill amends the provisions relating to the special liens for estate and gift taxes, first, to make it clear that these special liens are extinguished after the running of the period of limitations on the collection of the underlying estate or gift tax liability and, second, to extend to additional categories of interests the

10. To the extent Vestal attempts to argue that the assessment against the Estate was untimely with regard to the gifts made to her and Davenport because the IRS learned of the gift in the 1983 gift tax return, we address that claim, raised for the first time on appeal, below.

11. We appreciate Vestal's frustration at being held liable for gifts made many years ago. Yet many of her arguments are essentially policy-based attacks on the IRC and the IRS, which should be left to the IRS or Congress for resolution, not the courts. *See, e.g., U.S. v. Geniviva*, 16 F.3d 522, 525 (3rd Cir.1994)

(expressing "compassion for the equitable position" of transferees, but holding that they must appeal to the executive or legislative branches for relief). Moreover, our holding is in accordance not only with those cases that have considered the issue but also with the general idea that "[s]tatutes of limitation barring the assessment and collection of taxes justly due and unpaid receive a strict construction in favor of the Government, and limitations in such cases will not be presumed in the absence of clear legislation to the contrary." Mertens, *Federal Law of Income Taxation*, § 57:03 (2002).

same protection against the special estate and gift tax liens which these interests are accorded by the bill in the case of the general tax lien.

S.Rep. No. 89–1708 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3722, 3724, 3735.

■ We find Vestal's argument unpersuasive. As a general matter, we will not invoke legislative history absent ambiguity in the text of a statute. *In re Geneva Steel Co.*, 281 F.3d 1173, 1178 (10th Cir. 2002). Yet even if we delve into the legislative history cited by Vestal, we find her argument unconvincing for at least three reasons. First, courts that have examined § 6324's legislative history have noted that it is "of little aid" in construing the statute. *United States v. Cleavenger*, 517 F.2d 230, 232 (7th Cir.1975). Second, the legislative history Vestal refers to—indeed even the cases she refers to—discuss § 6324's lien provision and make few, if any, references to the personal liability provision, much less the applicable statutes of limitations for that liability. *See United States v. Davis*, 52 F.3d 781, 782 (8th Cir.1995) (focusing on lien provision); *Cleavenger*, 517 F.2d at 233 (same). Third, the language in the legislative history and statutory text that Vestal emphasizes in her opening brief—language referring to the fact that the ten-year lien expires if the underlying gift tax "becomes unenforceable by reason of lapse of time," 26 U.S.C. § 2634(b)—does not bolster her claim that the ten-year-lien period created an across-the-board limitations period. All this clause suggests is that if the underlying tax liability becomes unenforceable, the special lien's duration is shortened. *United States v. Potemken*, 841 F.2d 97, 100 (4th Cir. 1988). Accordingly, we reject Vestal's legislative history argument.

### C. *Notice Concerning Gift to Vestal*

■ Vestal also devotes a substantial portion of her briefs to arguing that the IRS is time-barred from collecting gift taxes because its assessment of liability against the Estate was untimely, at least in regard to her gifts. She, argues that "the filing of the gift tax return [by Birnie Davenport] on March 31, 1983 ... was sufficient to begin the running of the statute of limitations with respect to any additional taxes that might be owed and resulting" from the stock given to them individually. In essence, Vestal asserts that because Birnie Davenport filed a gift tax return in 1983 reflecting the fact that she had *forgiven the promissory notes* Vestal and Davenport gave to her for the 1980 sale of Hondo stock, the IRS was also on notice of the gifts predicated on the undervaluation of the Hondo stock at the time of the sale and should not have sat "idly by when it ha[d] the necessary facts ... to collect [the] unpaid taxes."

■ Vestal is correct that we have recognized that "once [a] taxpayer has evinced an honest and genuine effort to satisfy the law by filing such a return, the § 6501(a) period begins to run." *Dowell v. Commissioner*, 614 F.2d 1263, 1265 (10th Cir.1980); *see also Lucia v. United States*, 474 F.2d 565, 570 (5th Cir.1973) (noting that the statute of limitations for collecting deficient taxes might begin to run when the IRS "has been informed by the taxpayer that there is, or might be, tax liability"). Vestal, however, is not entitled to assert this argument on appeal, because she never raised the argument below. *See Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir.1995) (explaining that issues not raised before the district court will not be considered on appeal "except for the most manifest error"). Indeed, in this case, the district court *expressly noted that the parties had not challenged the timeliness of the IRS's assessment against the Estate* and that in previous rulings, the tax court

had found the assessment timely.[12] *Estate of Davenport*, 159 F.Supp.2d at 1334–35.

Vestal would nonetheless have us exercise our discretion and address the issue she explicitly failed to raise below. *See Colorado Interstate Corp. v. CIT Group/Equip. Fin., Inc.*, 993 F.2d 743, 751 (10th Cir.1993). Vestal attempts to overcome her default by arguing that the district court's order "unilaterally" applied § 6502's statute of limitations provision to this case, despite the fact that the IRS never identified the statute of limitation period for bringing a personal liability action under § 6324(b).

 We are not convinced by this argument. In the joint brief filed with the district court, Botefuhr, Davenport, and Vestal argued at length that the IRS was time-barred from holding them personally liable for Birnie Davenport's gift tax deficiencies. Clearly, the claim that the IRS knew in 1983 about the gifts of Hondo stock but failed to act upon that knowledge until the 1990s, as Vestal and Davenport now claim, could and should have been raised below, regardless of the § 6502 issue. Additionally, we find unconvincing Vestal's claim that the district court's invocation of § 6502 changed the nature of this case, given that § 6502 is a general statute of limitation provision and that prior courts have applied § 6502 in the § 6324 context.[13] Moreover, as a representative of Birnie Davenport's Estate, Vestal would, or at least should, have had every incentive to argue that the gift tax return filed by Birnie Davenport in 1983 triggered the statute of limitations provisions under § 6501 and § 6502 for bringing a claim against the Estate.[14] (Vestal, along

12. The application of this rule seems particularly appropriate in this case. Vestal's attorney during oral argument expressly claimed that the gift tax return filed in 1983 discussed Hondo stock. Our review of the documents contained in the record (which we reviewed out of an abundance of caution) show no reference to Hondo stock in this return. In fact, the installment note that allegedly accompanied the return only states that Vestal agreed to make payments to Birnie Davenport "[f]or value received." It does not reference Hondo stock. We are also puzzled by Vestal's repeated suggestion that the 1982 gift tax return even dealt with the 1980 gifts of stock. Part of the 1980 gifts—the gifts at issue in this case—arose because Birnie Davenport sold Vestal (and Davenport) Hondo stock at a discounted rate. *Estate of Davenport*, 184 F.3d at 1187–88; *Estate of Davenport*, 1997 WL 491571, 74 T.C.M. (CCH) 405, 1997 Tax Ct. Memo LEXIS 468, at *32 (Aug. 25, 1997). Vestal herself acknowledges that the IRS treated the forgiveness of the promissory note in 1982 and the 1980 sales agreement as separate gift transactions. In her opening brief, for instance, Vestal asserts that "nine years after the 1982 gift tax return was filed by Mr. Davenport, the IRS claimed that the Hondo stock had been undervalued, that the sale of the stock to Vestal and Davenport had been for less than adequate consideration,

and that a gift had also been made to Vestal and Davenport in 1980, as well as in 1982." Moreover, in assessing Vestal's liability, the district court specifically *reduced* her liability by the amount she "paid for the stock ($804.00)." 159 F.Supp.2d at 1336. Thus, by Vestal's own admission, it appears that she may have received two gifts from Birnie Davenport. First, she received a gift in 1980—when she "bought" the Hondo stock at a discounted rate. Second, she received a second gift in 1982—when Birnie Davenport forgave the promissory note (which reflected the discounted purchase price). We need not resolve this issue, however, because Vestal failed to preserve this claim below.

13. Even if this court were to conclude that the district court's invocation of § 6502 entitles Vestal to argue that the IRS learned of their stock gifts in 1983, she would not be entitled to the full relief she seeks. Vestal would still be liable for taxes associated with the gifts made to Botefuhr. *La Fortune*, 263 F.2d at 194 (noting that a donee is liable for any gift tax incurred by the donor during the year in which he gave to the donee).

14. Vestal argues for the first time in her *reply* brief that Birnie Davenport's 1982 *income tax* return gave the IRS *notice* about the 1980

with Botefuhr and Davenport, after all, conceded the Estate's liability.)

■ Vestal also argues for the first time on appeal that she cannot be held liable for any gift tax deficiencies because Birnie Davenport paid some gift tax in 1983, and "if the donor has paid the tax, even if deficient, the donee no longer has any liability." For the reasons outlined above, this argument fails because it is asserted for the first time on appeal. Even if we were to address the claim, however, we would reject it. A straightforward reading of § 6324 indicates that a donee is liable when a donor fails to pay the full gift tax owed, even if the donor has made a partial, yet deficient, payment or filed a tax return claiming that no tax is owed, as precedent establishes. *Berliant v. Commissioner*, 729 F.2d 496, 497–98, 502 (7th Cir.1984) (upholding transferees' liability for estate tax where estate filed an initial return, but IRS subsequently concluded that return undervalued estate's assets); *Moore v. Commissioner*, 146 F.2d 824, 824 (2d cir.1945) (upholding donee liability where donor made deficient payment); *Wilkes v. United States*, 50 F.Supp.2d 1281, 1282 (M.D.Fla.1999) (explaining that "if the estate tax is not paid in full when due …, then … transferees 'shall be personally liable for such tax'").

■ In summary, the district court properly concluded that the ten-year lien provision in § 6324(b) does not create a statute of limitations for collecting gift taxes from a donee under § 6324(b). Instead, case law supports the conclusion reached by the district court, that if an action could be timely commenced against a donor under the provisions of § 6501 and § 6502,

an action against the donee under § 6324(b) will be considered timely.

## V. VALUE OF HONDO STOCK

■ At its core, this issue centers around whether Vestal is bound by the Estate's stipulation during the tax court proceedings that the market value of Hondo stock in 1980 was $2,000.00 per share. *See Estate Davenport*, 184 F.3d at 1179 n. 2; *Estate Davenport*, 1997 Tax Ct. Memo LEXIS 468, at *24 n. 7. As discussed above, the value of Hondo stock at the time of the transfer is important to Botefuhr's, Davenport's, and Vestal's case, because, generally speaking, a donee's liability for a donor's gift tax is capped by the value of the gift received. When determining Vestal's tax liability, the district court used the $2,000.00 per share figure. *See Estate of Davenport*, 159 F.Supp.2d at 1335–36 ("Based on the parties' stipulation and the Tax Court's ruling in previous litigation, this Court adopts the value of the stock gifted by Birnie Davenport at $2,000.00 per share.").

On appeal, Vestal advances various arguments for why she is not bound by this figure. In particular, she contends that the stipulation was limited to the tax court proceeding only and does not preclude litigation of that issue in this case. We agree.

■ As an initial matter, we note some confusion over whether the district court invoked the doctrine of claim preclusion or issue preclusion when concluding that the stock should be valued at $2,000.00 per share. Ultimately, however, we conclude that this matter must be evaluated as an

---

gifts, and she attempts to supplement the record with information supporting this claim. This claim differs from the new argument Vestal introduced in her opening brief—that Birnie Davenport's allegedly good faith paying of the gift tax in 1983 relieved Vestal of

any gift tax liability. "This court does not ordinarily review issues raised for the first time in a reply brief." *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir.2000) (internal citations omitted). We therefore decline to consider that argument.

assertion of issue preclusion, rather than claim preclusion. Claim preclusion is inapplicable to the situation here presented.

 Issue preclusion is designed to prevent needless relitigation and bring about some finality to litigation. Under the doctrine, "[w]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Four elements must be demonstrated in order to trigger issue preclusion: "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Dodge v. Cotter Corp.,* 203 F.3d 1190, 1197 (10th Cir.2000); *see also Orjias v. Stevenson,* 31 F.3d 995, 1010 (10th Cir.1994) (identifying elements for issue preclusion).

 The critical issue is whether the prior stipulation in the estate proceeding on the value of Hondo stock constitutes an "adjudication on the merits." In the issue preclusion context, the underlying issue must have been adjudicated on the merits. *See Jones v. United States,* 466 F.2d 131, 133 (10th Cir.1972) (explaining that issue preclusion "is only applicable when an issue identical to that presented in the second suit has been raised and fully adjudicated under identical and inseparable relevant facts"). "Generally speaking, when a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been 'actually litigated' and thus is not a proper candidate for issue preclusion." *Otherson v. Dep't of Justice,* 711 F.2d 267, 274 (D.C.Cir.1983); *see also Kane v. Town of Harpswell,* 254 F.3d 325, 329 (1st Cir. 2001). This is particularly so when the stipulation does not "manifest an intent to be bound in a subsequent action." *Red Lake Band v. United States,* 221 Ct.Cl. 325, 607 F.2d 930, 934 (1979). As the *Restatement (Second) of Judgments* states:

> A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action.
>
> . . . .
>
> An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading; nor it is actually litigated if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial; *nor is it actually litigated if it is the subject of a stipulation between the parties.* A stipulation may, however, be binding in a subsequent action between the parties if the parties have manifested an intention to that effect.

*Restatement (Second) of Judgments* § 27 cmt. e at 256–57 (1982) (emphasis added); *see* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4443, at 252–53 (2d ed. 2002) ("Stipulation of individual issues is treated much as a consent judgment. A stipulation or admission may be binding in later stages of a continuing proceeding. But issue preclusion ordinarily does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation.") (footnotes omitted); *see also id.* at § 4442 at 236 (explaining that procedural default

might warrant *claim* preclusion but does not normally warrant *issue* preclusion); *id.* at § 4443 at 251 (explaining that consent judgments will justify *claim* preclusion but not *issue* preclusion). The Supreme Court has also recognized that stipulations in one tax proceeding generally do not amount to an adjudication on the merits for issue preclusion purposes. *See United States v. Int'l Bldg. Co.*, 345 U.S. 502, 506, 73 S.Ct. 807, 97 L.Ed. 1182 (1953).

Applying these principles to this case, it is clear that the parties never adjudicated the value of Hondo stock. The tax court's decision, for example, noted, "For purposes of this case, if we find that Birnie Davenport did transfer the stock in question, the parties have stipulated the fair market value of such stock was $2,000 per share at the time of the transfer." *Estate of Davenport*, 1997 WL 491571, 1997 Tax Ct. Memo LEXIS 468, at *24 n. 7. Likewise, in the prior appeal to this court, we observed, "The parties stipulated that the fair market values of Hondo stock in the third quarter of 1980 was $2,000 per share." 184 F.3d at 1179 n. 2. Such stipulations do not "manifest an intent to be bound" in subsequent litigation against a donee. *Red Lake Band*, 607 F.2d at 935, and, therefore, we reverse the district court's application to the contrary.

In summary, we hold that the district court erred in holding that the parties were precluded from relitigating the value of Hondo stock.[15]

## VI. CONCLUSION

We **REVERSE** the district court's conclusion that it had personal jurisdiction over Botefuhr and Davenport. We **AFFIRM** the district court's conclusion that the IRS timely commenced its collection

actions against Botefuhr, Davenport, and Vestal. Finally, we **REVERSE** the district court's conclusion that the parties were barred from litigating the value of Hondo stock. Accordingly, this case is **REMANDED** to the district court for proceedings consistent with this opinion.

---

15. All other arguments raised by the parties are rejected, either as without merit or as unnecessary to our decision. Appellant's Motion for Leave to File Supplemental Appendix to Reply Brief of Appellant, Patricia Vestal, is granted.