368 F.3d 1174
 ACTION EMBROIDERY CORPORATION, a California Corporation; Vanguard Industries East, Inc., a Virginia Corporation with its principal place of business in California, Plaintiffs-Appellants,
v.
ATLANTIC EMBROIDERY, INC., a Virginia Corporation, Defendant, and
Wolcott, Rivers, Wheary, Basnight, Kelly P.C., a Virginia Corporation, Defendant-Appellee.
 No. 02-56770.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 5, 2003.
 Filed May 27, 2004.
 
 Jeffrey T. Petersen, Weissman, Wolff, Bergman, Coleman, Grodin & Evall, LLP, Beverly Hills, CA, for the Appellants.
 James Anthony Murphy, Murphy Pearson Bradley & Feeney, San Francisco, CA, for the Appellee.
 Appeal from the United States District Court for the Central District of California; William J. Rea, District Judge, Presiding. D.C. No. CV-01-11187-WJR.
 Before PREGERSON, COWEN,* and W. FLETCHER, Circuit Judges.
 WILLIAM A. FLETCHER, Circuit Judge.
 
 
 1
 Appellants Action Embroidery Corp. ("Action") and Vanguard Industries East, Inc. ("Vanguard") appeal the district court's dismissal of their federal antitrust and state-law suit against Wolcott, Rivers, Wheary, Basnight & Kelly, P.C. ("Wolcott"), a Virginia professional corporation, for lack of personal jurisdiction. We decide two questions of first impression. First, we hold that venue and personal jurisdiction are independent requirements under Section 12 of the Clayton Act. Second, we join our sister circuits and adopt the doctrine of "pendent personal jurisdiction." We hold in this case that the federal district court has personal jurisdiction over the federal antitrust claims, and that it may, in its discretion, exercise pendent personal jurisdiction over the state-law claims contained in the same complaint.
 
 I. Background
 
 2
 Action, Vanguard, and Atlantic Embroidery, Inc. ("Atlantic") are all in the business of providing embroidery services to the United States Armed Forces. In 1999, the United States Department of the Navy solicited bids from embroidery companies. Vanguard and Atlantic both submitted bids, but the Navy awarded the contract to Spur Laundry and Cleaners, Inc. ("Spur").
 
 
 3
 After having failed to secure the contract, Atlantic filed a federal antitrust suit in the federal district court for the Eastern District of Virginia alleging that Action and Vanguard had entered into illegal price fixing and market allocation agreements. Atlantic alleged, inter alia, that Action and Vanguard had agreed with Spur that Spur would submit the lowest bid on the Navy contract, and would then illegally subcontract with Action to perform the work in Mexico. Wolcott represented Atlantic in this suit. Atlantic's suit was dismissed with prejudice on the eve of trial.
 
 
 4
 In December 2001, Action and Vanguard brought the present suit in the Central District of California against Atlantic, Wolcott, and various individuals for antitrust violations under the Sherman Act, 15 U.S.C. § 1, and for violations of California law. Action and Vanguard allege that Atlantic's Virginia district court suit was groundless. They allege that after Atlantic realized that it could not participate competitively in the embroidery market, it conspired with its law firm, Wolcott, to bring meritless and unfairly burdensome litigation against Appellants, its successful competitors. Action and Vanguard allege that the Virginia district court suit was intended to absorb their resources and to cast suspicion on their business practices, thereby subjecting them to investigation and impairing their ability to bid successfully on future contracts. Action and Vanguard allege that Atlantic pursued this litigation specifically to achieve anticompetitive goals prohibited by the antitrust laws.
 
 
 5
 Atlantic moved to dismiss for lack of personal jurisdiction and to transfer for lack of proper venue. The district court granted Atlantic's venue motion and transferred the suit against it to the Eastern District of Virginia. The propriety of that transfer is not before us. Wolcott moved only to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The district court granted Wolcott's motion and dismissed it from the action. Action and Vanguard timely appealed the dismissal of their suit against Wolcott.
 
 
 6
 We review the district court's decision to dismiss for lack of personal jurisdiction de novo. See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1128 (9th Cir.2003). Parties asserting personal jurisdiction have the burden of proving such jurisdiction. Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 538 (9th Cir.1986). When a district court does not conduct an evidentiary hearing before making its jurisdictional ruling, parties asserting jurisdiction need only make a prima facie showing of personal jurisdiction. Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1187 (9th Cir.2002). "In determining whether Appellants have met this prima facie burden, uncontroverted allegations in their complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [their] favor...." Id. (citations and internal quotations omitted).
 
 
 7
 II. Personal Jurisdiction Over the Federal Antitrust Claims
 
 A. Statutory Considerations
 
 8
 For a court to exercise personal jurisdiction over a defendant, there must be an "applicable rule or statute [that] potentially confers jurisdiction over the defendant." Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc. 551 F.2d 784, 787 (9th Cir.1977). Further, "[a] federal court obtains personal jurisdiction over a defendant if it is able to serve process on him." Butcher's Union, 788 F.2d at 538. A statutory basis for exercising personal jurisdiction may be found in a statute providing for service of process.
 
 
 9
 Action and Vanguard assert that Section 12 of the Clayton Act confers personal jurisdiction over defendant Wolcott in the Central District of California for their federal antitrust claims. This section, the long-arm statute for federal antitrust suits, provides in its entirety:
 
 
 10
 [1] Any suit, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; [2] and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.
 
 
 11
 15 U.S.C. § 22 (bracketed numbers and emphasis added). The district court held that it did not have personal jurisdiction over Wolcott because Action had "not argued that venue exists under either Section 12 or the general venue statute in order to justify use of Section 12's worldwide service of process provision as a means of establishing personal jurisdiction." That is, the district court held that proper venue is a necessary component of personal jurisdiction under Section 12 of the Clayton Act. Whether this is so is a question of first impression in this circuit.
 
 
 12
 In Go-Video, Inc. v. Akai Electric Co. Ltd., 885 F.2d 1406 (9th Cir.1989), we provided a partial but incomplete answer. The question in Go-Video was whether the special venue provision in Section 12 is the only source of venue for a federal antitrust suit, or whether the general venue provisions of 28 U.S.C. § 1391 are also available. We refused to read Section 12 as "an integrated whole," Go-Video, 885 F.2d at 1408, holding that the special venue provision of Section 12 is supplemented by the general venue provisions of § 1391 for federal antitrust plaintiffs. Id. at 1413. Accord In re Auto. Refinishing Paint Antitrust Litig., 358 F.3d 288, 296-97 (3d Cir.2004); Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 855 n. 16 (11th Cir.1988). GTE New Media Serv. Inc. v. BellSouth Corp., 199 F.3d 1343, 1350-51 (D.C.Cir.2000); Goldlawr, Inc. v. Heiman, 288 F.2d 579, 581 (2d Cir.1961), rev'd on other grounds, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Under Go-Video, venue is proper in a federal antitrust suit if the venue requirements of either Section 12 or 28 U.S.C. § 1391 are satisfied.
 
 
 13
 When we decided Go-Video, a number of district courts had held that the availability of personal jurisdiction under Section 12 depended on the availability of venue. See, e.g., Wood v. Santa Barbara Chamber of Commerce, Inc., 507 F.Supp. 1128, 1141 (D.Nev.1980); Friends of Animals, Inc. v. Am. Veterinary Med. Ass'n, 310 F.Supp. 620, 624 (S.D.N.Y.1970); Chem. Specialties Sales Corp. v. Basic Inc., 296 F.Supp. 1106, 1109 (D.Conn.1968). Delong Equip. Co., 840 F.2d at 857, 855-58 (conducting personal jurisdiction and venue analyses separately under Section 12: "Unlike personal jurisdiction issues, which primarily concern the extent of a court's power over the parties and the fairness of requiring a party to defend itself in a foreign forum, venue primarily addresses the convenience of the forum."); Paper Sys. Inc. v. Mitsubishi Corp., 967 F.Supp. 364, 366-67 (E.D.Wis.1997) ("When, as here ... the law provides for worldwide service of process and when, as here, nothing in the legislative history implies reading a venue provision as a jurisdictional limitation, the worldwide service of process clause should stand on its own, independent from the venue clause."); Petroleum Fin. Corp. v. Stone, 116 F.Supp. 426, 428 (S.D.N.Y.1953) (conducting personal jurisdiction and venue analyses separately under Section 12). However, we found it unnecessary to address this issue in Go-Video. The plaintiff had not disputed the district court decisions holding that proper venue is a condition of personal jurisdiction under Section 12, probably because if we agreed with Plaintiff's argument that venue was available under § 1391, it could bring suit in its chosen forum regardless. See Go-Video, 885 F.2d at 1412 n. 6 (referring to district court holdings as "undisputed").
 
 
 14
 We based our holding in Go-Video in part on our understanding of the Clayton Act's legislative history. We wrote that "the Congressional treatment of what ultimately became Section 12 ... reveal[ed] that Congress viewed the questions of venue and service of process separately...." Id. at 1410. We noted that the original House Bill "contained only a venue provision," and that when a congressman "objected to a proposed amendment on the ground that service of process might not be possible in some places in which venue would lie, he was rebuffed by [another congressman], who explained that service of process could be dealt with later, if necessary, in `subsequent legislation.'" Id. We observed that what would ultimately become the provision for worldwide service of process in Section 12 "was added without debate or objection, with no indication that it was intended to relate, let alone be subject, to the [S]ection's venue provision." Id. Finally, we wrote, "From this sparse history, we certainly cannot conclude that Congress affirmatively intended that [S]ection 12's service of process provision would be limited by the venue provision which, apparently as a matter of happenstance or convenience, preceded it in the text of the legislation ultimately enacted." Id.
 
 
 15
 That Congress did not link the requirements for venue and personal jurisdiction under Section 12 is not surprising. It has long been recognized that the question of a federal court's competence to exercise personal jurisdiction over a defendant is distinct from the question of whether venue is proper. "In distinguishing between the principles of jurisdiction and venue, we note that `[j]urisdiction is the power to adjudicate, while venue, which relates to the place where judicial authority may be exercised, is intended for the convenience of the litigants.' "Securities Inv. Prot. Corp. v. Vigman, 764 F.2d 1309, 1313 (9th Cir.1985) (citing Still v. Rossville Crushed Stone Co., 370 F.2d 324, 325 (6th Cir.1966) (further internal citations omitted) (emphases in original)). The Supreme Court has emphasized the distinction between these concepts, writing that "[t]his basic difference between the court's power and the litigant's convenience is historic in the federal courts." Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168, 60 S.Ct. 153, 84 L.Ed. 167 (1939); see also Leroy v. Great W. United Corp., 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) ("The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum.").
 
 
 16
 Our sister circuits have conducted discrete analyses of personal jurisdiction and venue under similar federal statutes in which nationwide service of process is authorized. They have given no indication in those cases that personal jurisdiction depends on venue. In Mariash v. Morrill, 496 F.2d 1138 (2d Cir.1974), the Second Circuit was asked to determine whether personal jurisdiction and venue were proper in an action under the Securities Exchange Act of 1934 ("Exchange Act"). Section 27 of the Exchange Act is, in relevant part, nearly identical to Section 12 of the Clayton Act. See 15 U.S.C. § 78aa. We noted in Go-Video that Section 27 of the Exchange Act was modeled after Section 12 of the Clayton Act, and "that § 27 of the Securities Exchange Act is a peculiarly apt statute from which to analogize to § 12 of the Clayton Act." 885 F.2d at 1414. In Mariash, the Second Circuit analyzed venue and personal jurisdiction separately under the Exchange Act, giving no indication that the two requirements were in any respect interdependent. See 496 F.2d at 1143-45.
 
 
 17
 The Racketeer Influenced and Corrupt Organizations Act ("RICO") is also similar to Section 12 of the Clayton Act in that it contains special venue and nationwide service of process provisions in the same statutory section. See 18 U.S.C. § 1965. Our sister circuits have held in RICO cases that venue and personal jurisdiction analyses are distinct. Thus, in ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 627 (4th Cir.1997), the Fourth Circuit found personal jurisdiction, but noted that "[i]n so holding, we do not decide any issues of venue raised by the defendants.... That may mean that with respect to [Defendant] venue is not proper in South Carolina under § 1965(a)." Further, in Lisak v. Mercantile Bancorp, Inc., 834 F.2d 668, 671 (7th Cir.1987), the Seventh Circuit found personal jurisdiction, but noted in remanding the case, "Although this case must be returned to the district court, it will not necessarily linger on the docket. It is hard to see how venue could be laid in Illinois." Id. at 672.
 
 
 18
 The juxtaposition of the venue and service of process provisions in Section 12, without more, does not convince us that Congress intended to make these concepts analytically interdependent, rendering a court's exercise of personal jurisdiction over an antitrust defendant dependent on the propriety of venue. Without a clear indication from Congress that it intended to do so, we will not blur the basic, historic difference between these discrete concepts and what is required for their satisfaction. We therefore hold that under Section 12 of the Clayton Act, the existence of personal jurisdiction over an antitrust defendant does not depend upon there being proper venue in that court.
 
 B. Constitutional Considerations
 
 19
 The exercise of personal jurisdiction must "accord with constitutional principles of due process," Vigman, 764 F.2d at 1314, and comport with "traditional notions of fair play and substantial justice." Go-Video, 885 F.2d at 1415 (internal quotations and citation omitted). Under International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and subsequent cases, due process is satisfied when the forum state has "minimum contacts" with a defendant. Vigman, 764 F.2d at 1315. In Go-Video we held that the relevant forum with which a defendant must have "minimum contacts" in a suit brought under Section 12 of the Clayton Act is the United States. "[W]hen a statute authorizes nationwide service of process, national contacts analysis is appropriate. In such cases, `due process demands [a showing of minimum contacts with the United States] with respect to foreign defendants before a court can assert personal jurisdiction.'" Go-Video, 885 F.2d at 1416 (quoting Vigman, 764 F.2d at 1316) (alteration in original). In a statute providing for nationwide service of process, the inquiry to determine "minimum contacts" is thus "whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country." Vigman, 764 F.2d at 1316. As a Virginia professional corporation operating in the United States, Wolcott has clearly had such minimum contacts. Constitutional principles of due process are therefore satisfied, and personal jurisdiction over Action and Vanguard's antitrust claims against Wolcott is proper.
 
 III. Pendent Personal Jurisdiction
 
 20
 Having established personal jurisdiction over Wolcott for Action and Vanguard's antitrust claims, we must determine whether the court also has personal jurisdiction over Wolcott with respect to their California state-law claims. Personal jurisdiction must exist for each claim asserted against a defendant. Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1289 n. 8 (9th Cir.1977). If the state-law claims against Wolcott are to be heard in the Central District of California, there must be a basis for personal jurisdiction over these claims. For purposes of our analysis, we accept Wolcott's contention that California's long-arm statute (which is coextensive with the jurisdiction allowable under the Due Process Clause of the Fourteenth Amendment), see Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir.1998) (citing Cal.Civ.Proc.Code § 410.10), would not allow the exercise of personal jurisdiction over these state-law claims if they were standing alone.
 
 
 21
 Many of our sister circuits have adopted the doctrine of "pendent personal jurisdiction." Under this doctrine, a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction. See, e.g., United States v. Botefuhr, 309 F.3d 1263, 1272-75 (10th Cir.2002); Robinson Eng'g Co., Ltd. Pension Plan Trust v. George, 223 F.3d 445, 449-50 (7th Cir.2000); ESAB Group, 126 F.3d at 628-29; IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056-57 (2d Cir.1993); Oetiker v. Werke, 556 F.2d 1, 5 (D.C.Cir.1977); Robinson v. Penn Cent. Co., 484 F.2d 553, 555-56 (3d Cir.1973). Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction. In Data Disc, we noted the jurisdictional issues presented in such a case, but "reserve[d] judgment on this issue until it [wa]s properly before us." 557 F.2d at 1289 n. 8.
 
 
 22
 Today, we join our sister circuits and adopt the doctrine of pendent personal jurisdiction. We note, in adopting this doctrine, as the Tenth Circuit has recently noted, that "every circuit court of appeals to address the question [has] upheld the application of pendent personal jurisdiction." Botefuhr, 309 F.3d at 1273. Like the Tenth Circuit "we see no reason why, in certain situations, the assertion of pendent personal jurisdiction would be inappropriate." Id. When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts. We believe that judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties is best served by adopting this doctrine.
 
 
 23
 Like our sister circuits, we hold that the actual exercise of personal pendent jurisdiction in a particular case is within the discretion of the district court. "[T]he district court may have discretion to dismiss the pendent claims where' considerations of judicial economy, convenience and fairness to litigants' so dictate." Oetiker, 556 F.2d at 5 (citation omitted). Thus, while it is clear that Action and Vanguard's state-law claims arise out of a common nucleus of operative fact with their federal antitrust claims and that the district court has pendent jurisdiction over the state law claims, we leave it to the discretion of that court to decide whether to retain or dismiss the pendent state-law claims.
 
 Conclusion
 
 24
 We hold that the analyses of personal jurisdiction and venue under Section 12 of the Clayton Act are distinct. Specifically, we hold that the existence of personal jurisdiction under Section 12 does not depend on there being proper venue. We hold that Section 12's nationwide service of process provision authorizes personal jurisdiction over Wolcott in the Central District of California, and that the exercise of such jurisdiction complies with the requirements of the Due Process Clause of the Fifth Amendment. Further, we hold that the doctrine of pendent personal jurisdiction is the law of this circuit. On remand, the district court may, in its discretion, retain or dismiss Action and Vanguard's state-law claims.
 
 
 25
 We thus hold that the district court improperly based its dismissal of Action and Vanguard's suit for lack of personal jurisdiction on the ground that venue was not proper. However, we do not decide in this appeal whether venue is proper. A defendant over whom personal jurisdiction exists but for whom venue is improper may move for dismissal or transfer for improper venue under 28 U.S.C. § 1406(a). A defendant for whom venue is proper but inconvenient may move for a change of venue under 28 U.S.C. § 1404(a). We express no opinion as to whether, on remand, a motion by Atlantic under either of these sections should succeed.
 
 
 26
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 *
 The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation